CASE 16—PETITION EQUITY—OCTOBER 1.

# Forwood, &c., v. Forwood, &c.
## Same v. Same.

APPEALS FROM LOUISVILLE LAW AND EQUITY COURT.

AN ANTENUPTIAL AGREEMENT, whereby the woman relinquishes her right of dower and distributable share in her intended husband's estate, is a legal contract, and the intended marriage alone is a sufficient consideration to uphold it.

In this case the charge of fraud and unfairness on the part of the husband in the procurement of such a contract is held not to be established by the evidence, and the contract is enforced.

JAMES HARLAN FOR APPELLANTS.

Marriage is a sufficient consideration to uphold a marriage contract. (Bell on Husband and Wife, 306; 1 Bishop on Married Women, secs. 418-427; Dyke v. Randall, 13 Eng. L. & E., 404; Gesler v. Gesler, 1 Bailey, 379; Andrews v. Andrews, 8 Conn., 79; Spina v. Jeter, 9 Richardson Eq., 437; 4 Kent's Com., 464; Johnson v. Dillard, 1 Bay, 232; Maguire v. Thompson, 7 Peters, 438; 103 U. S., 24; Naill v. Maurer, 25 Md., 538; Gould v. Wonack, 2 Ala., 83; Kline v. Kline, 64 Penn. St., 122; Bierer's Appeal, 92 Pa. St., 268; Pearce v. Pearce, 71 New York, 154.)

S. M. BERNARD AND J. BARBOUR ON SAME SIDE.

Cite: 4 Kent's Com., 464; Naill v. Maurer, 25 Md., 527; Dyke v. Randall, 13 Eng. L. & E., 404; Andrews v. Andrews, 8 Conn., 79; Shiver v. Leter, 9 Richardson Eq., 434; Gesler v. Gesler, 1 Bailey, 379; Kline v. Kline, 57 Pa., 120; 64 Pa., 126; Bierer's Appeal, 92 Pa., 266.

A. BARNETT AND C. B. SEYMOUR FOR APPELLEES.

1. The antenuptial contract is not binding upon appellee. (Bishop on Married Women, vol. 1, sec. 424; Pierce v. Pierce, 71 N. Y., 154; Kline's Estate, 64 Pa. St., 126; Beevis' Appeal, 92 Pa. St., 265.)

2. Since the Revised Statutes, widow may claim dower and distributive share—being charged value of property devised to her. (Gen. Stats., chap. 31, secs. 11 and 12; chap. 52, art. 4, sec. 6; Story's Equity, sec. 1098; Craig v. Walthall, 14 Gratt., 524.)

3. Judgment determining right to dower and distribution is not a final judgment from which an appeal can be taken. (Freeman on Judgments, secs. 12, 16, 30, 34; Bondurant v. Apperson, 4 Met., 32.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

William H. Forwood died in Jefferson county in 1883. After his death his will was duly proven and admitted to record in the Jefferson county court.

In 1884 the appellee, Nancy Elizabeth Forwood, as the widow of William H. Forwood, deceased, instituted suit in the Louisville Law and Equity Court against the executors and devisees of William H. Forwood, for the purpose of having his estate settled, and her dower in the realty allotted, and her distributable share in the personalty set apart to her.

In the second paragraph of appellee's petition and the amendment thereto, she discloses the fact that she and William H. Forwood were married in Shepherdsville, Bullitt county, Kentucky, on the fourth day of March, 1880 ; that on that day, but before the marriage ceremony was performed, she and William H. Forwood entered into a written marriage contract, by which it was agreed that she was to retain her right to all of the property that she then owned or might thereafter acquire ; to contract and be contracted with in her own name ; to sue and be sued in her own name ; and that he was to have no right to any property that she then owned or might thereafter acquire, nor any interest therein, nor in anywise control the same. It was also agreed that she was to have no right to any property that he then owned or thereafter acquired, nor was she to have dower in any of his real estate after his death, nor any distributable share in his personal estate after his death.

She alleges in said second paragraph and amendment thereto, that at the time said contract was signed

and acknowledged by her, she and William H. Forwood were already engaged to be married, "and the contract, while it was signed in contemplation of marriage, was not made in consideration of marriage; but that they had previously mutually agreed and promised to marry one another for the sole consideration of each other's promise to marry, and not for any other consideration whatever."

That at the time of signing the contract William H. Forwood was a man sixty years of age, and of large business experience and skill, and owned about seventy thousand dollars' worth of property, mostly real estate; and that she was only twenty-two years of age, and of no business experience, and owned no property, and had no expectation of inheritance except from her father and mother, whose estate, which consisted of real estate, did not exceed fifteen thousand dollars in value, to be divided among five children.

That the contract was presented to her for her signature while they were on their way to Shepherdsville to be married; and that the same was signed and acknowledged by her after her arrival at Shepherdsville. That she and William H. Forwood, at the time said contract was signed, both resided in the city of Louisville—she residing with her father and mother; that he induced her to keep their intention to marry a secret from her family and friends, and to go with him to Shepherdsville, and to be married there; that she had no acquaintances or friends in Bullitt county with whom she could consult about the propriety of signing the contract; and that William H. Forwood

induced her to sign it, without having any of her friends to consult except himself, so that she could act intelligently and advisedly in reference to the propriety of signing the contract. That his conduct was planned and carried out with the intent to overreach her. That the contract was unreasonable, unfair, unjust, and was obtained by covin and misrepresentation.

In order to settle the rights of the parties to this controversy, it is first necessary to determine the nature of the antenuptial agreement made between the appellee and her husband, William H. Forwood.

At common law, by the marriage the wife acquired the right to be endowed of one-third of the lands of which her husband was seized in fee at the time of marriage, or during coverture.

There is a class of cases which hold that a woman can not by antenuptial contract legally dispose of her right to dower in her intended husband's lands, because, first, she can not contract away or release a right before it has accrued; second, that no right or title to a freehold can be barred by a collateral satisfaction. This class of cases, therefore, holds that such a contract is not enforceable at law, because it has no legal existence; but it is an executory equitable agreement, which a court of equity will enforce a specific performance of as against the widow, provided the agreement is reasonable, fair and upon an adequate consideration; but if it appears that the agreement is unreasonable, unconscientious, and without an adequate consideration, a court of equity will not enforce a specific performance of it. Such are the cases relied upon by the counsel for the appellee.

There is another class of cases which hold, that while such a contract is not binding at law, because the parties can not contract away or release a right that does not exist, yet its enforcement does not rest upon the doctrine of specific performance; but the contract constitutes an equitable bar to the widow's right of dower. This class of cases does not regard an adequate consideration as essential to uphold the contract. Any valuable consideration is deemed sufficient.

The question involved in both of these classes of cases was that of a jointure or settlement upon the intended wife in lieu of her dower or distributable share in her intended husband's estate.

There is another class of cases that holds (and with which we agree) that an antenuptial contract is a legal contract, the consideration of which may be, first, that of the intended marriage alone; or second, that of a jointure or settlement upon the intended wife in lieu of her dower or distributable share in her intended husband's estate; and that either of these considerations, if both parties are *sui juris*, is sufficient to uphold the antenuptial agreement on the part of the woman to relinquish her right of dower and distributable share in her intended husband's estate. By such a contract the parties do not, in fact, contract away a right that does not exist; but they do what is done every day, namely, provide a rule by agreement to be applied to their property rights in view of the relation that they are about to enter into, instead of the rule that the law would furnish in the absence of the agreement. (Bishop on the Law of Married Women, volume 1, sections 418, 425, 427.)

Also, this court virtually held in the case of Crostwaight v. Hutchinson, 2 Bibb, 408, that an antenuptial contract which was not to take effect until after coverture was a legal contract.

To the same effect is the case of Mitchel's Administrator v. Mitchel, 4 B. M., 380.

We have seen that marriage alone is a sufficient consideration to uphold an antenuptial marriage contract.

Bishop (volume 1 on Married Women, section 775) says: "To say, therefore, that it is to be regarded, when it is the inducement to any contract, as a valuable consideration, is to utter truth, yet only a part of the truth. What this utterance lacks is, in our books, not unfrequently expressed by the adjective highest; as marriage is the highest consideration known to the law."

In the case of Naill v. Maurer, 25 Md., p. 538, the court says: "The contract was in contemplation of marriage, and, as clearly appears, was intended to bar or prevent the acquisition thereby of any right by either party in the property of the other, in order that the marriage proposed might take place. The main object in view was the consummation of the marriage, and it was to that end that the contract was executed. It seems almost impossible to view the contract as founded on any other consideration, although the reciprocal character of the stipulations might be held to constitute one sufficient to make the contract binding and effective. But whether the marriage they proposed be expressly mentioned as a consideration or not, we think it must be regarded as such within the purview and meaning of the contract."

The consideration of marriage is not only regarded as sufficient to uphold an antenuptial marriage contract, but the consideration may be regarded by the · woman as of inestimable value to her—a value that would, by far, outweigh her property rights in the estate of her intended husband.

The appellee's marriage contract with her husband, William H. Forwood, therefore, must stand, unless he overreached and defrauded her in the making of it.

The allegations of the second paragraph of her answer and the amendment thereto, of which we have given the full substance, were denied, except the allegations that the marriage agreement filed with the appellee's answer was signed and acknowledged by her on the day of her marriage, and that she and William H. Forwood lived in Louisville, and went to Shepherdsville to get married. And not one of the allegations denied was proven.

If it appeared that the appellee was inveigled into making this contract by unfair means, such as taking advantage of her ignorance, her affections, or concealing the truth from her, we would not hesitate to set it aside as a fraud upon her. But such a state of case does not appear. On the contrary, she does not allege that she did not know the nature and legal effect of the contract; nor does she allege that she did not make it freely and voluntarily. It is true, she says that when she signed the contract she was deprived of the advice of her friends as to the propriety of making it. This may be true; but she does not allege that she desired the advice of her friends, or that her purpose would have been changed by their

advice. In addition to her failure to deny that she signed the contract with a full knowledge of its scope and legal meaning, it is clear that she understood its meaning ; for the proof is clear that she was a woman of intelligence, and possessed a clear and cool judgment ; that she knew that her intended husband was a man of reputed wealth ; that some three years after the marriage she, by a solemn writing drawn by herself, stipulated that she was not entitled to dower in her husband's real estate, because she had relinquished the same by antenuptial marriage contract. Also, the preponderence of the evidence shows that several days before the marriage a written marriage contract which embodied the same terms as the one under consideration, was agreed on and signed by the appellee and William H. Forwood.

For these reasons, we conclude that the appellee made and signed the contract in question with a full understanding of its scope and legal effect ; and that she signed it freely and willingly, and was not overreached or defrauded by William H. Forwood.

We are also of the opinion that the marriage agreement was a sufficient consideration to uphold this antenuptial contract, and that the appellee is not entitled to dower or distributable share in William H. Forwood's estate.

The judgment of the lower court to the extent that it set aside this contract was final, and the appellants had the right to appeal from it.

The judgment of the lower court setting aside the marriage contract is reversed, and the case is remanded for further proceedings consistent with this opinion.