## Warren et al. v. Cary-Glendon Coal Co. et al.

June 2, 1950.

James S. Forester, Judge.

Robert R. Boone for appellants.

Logan E. Patterson and James Wilson for appellees.

CHIEF JUSTICE SIMS—Reversing.

The question for determination upon this appeal is

whether or not the chancellor erred in granting specific performance of a contract appearing in the form of two offers, each bearing date of Sept. 19, 1946. Both offers were written and made by The Big Jim Coal Company (hereinafter referred to as the Company) acting through P. E. Guthrie. The first offer was refused by the Warrens but they accepted and signed the second. As the offers are interrelated, we here copy both of them:

"Offer No. 1            September 19, 1946.

"For all the mineral rights, coal, oil, gas and all other minerals under the lands now owned and claimed by Warrens on the watersheds of Four Mile Creek, Caney Creeks in Bell County, and Moores Creek in Knox County, together with all surface rights to be the same rights as if owned by us. We offer first for the 131 acre tract $2500.00 (half to be put in escrow pending the decision of the pending law suit). For the balance of Warren's holdings and claims on the other lands, we offer $1300.00 or a total of $3800.00 cash. The tract of land on the watershed of Caney Creek is to be transferred in fee."

"Offer No. 2            September 19, 1946.

"We offer to lease with the option to purchase the same properties mentioned in Offer No. 1 at 10c per ton royalty on coal mined (½ of royalty to be put in escrow from the 131 acre tract). Minimum rental $100.00 per year, Option on the 131 acres $5400.00 (½ to be put in escrow) Option on the balance $2600.00 or a total of $8000.00. Any royalties paid to apply on the purchase price if and when purchased. The right to use all the surface and timber to be the same as if owned by us. No royalty to be paid on coal mined from the tract of land lying on the watershed of Caney Creek, and if and when this tract is purchased it is to be transferred in fee.

"The Howell tract where home is to be reserved. This contract is to be written out in full later on as the final elaborate agreement between the parties.

"In testimony whereof, witness our signatures the day and date first above.

"25 trees above the Rocks reserved by Warren.

"Big Jim Coal Company
"By P. E. Guthrie, Partner
"Willis Warren
"Ollie Warren"

Appellants advance five reasons for reversal of the judgment: 1. The election by the Company to exercise the option came at a time when it was no longer in existence; 2. the option is coupled with an unenforceable lease upon which its existence depends; 3. there was no meeting of the minds of the parties to the contract; 4. the company was guilty of laches; 5. the contract is within the statute of frauds. As we have reached the conclusion that the option had expired before the Company elected to exercise it, we deem it unnecessary to discuss the other points raised which were elaborately and learnedly discussed in the briefs.

It will be noted that the first offer made by the Company was to purchase for $3,800 the mineral rights under the lands therein mentioned, with the exception that the tract on Caney Creek was to be conveyed in fee. Appellants rejected this offer, but accepted the Company's second offer "to lease with the option to purchase the same properties mentioned in offer No. 1 at 10c per ton royalty." The minimum royalty was $100 per year and the purchase price, in the event the option was exercised, was $8,000, to be credited by royalties theretofore paid. Attention is directed to the fact that no time was specified in the offer for the lease to start or to end, nor was any time specified within which the option to purchase must be exercised. It is patent the intention of the parties was that the option was limited in time to the duration of the lease.

The writing the parties signed was nothing more than a memorandum of an agreement which was later "to be written out in full." As no time was specified for the duration of the contract, it must be considered to be a lease at will which appellants could terminate upon one month's written notice. KRS 383.140; Rutherford v. Azarch, 266 Ky. 559, 99 S. W. 2d 719; 32 Am. Jur. "Landlord and Tenant" secs. 66 p. 81. Appellants accepted royalties of $144.60 which appear from the record to have been earned from coal mined from the 131 acre tract from Sept. 19, 1946, until Mrs. Ollie Warren's death on April 25, 1947, from which latter

date appellants refused to accept any royalties. On Sept. 10, 1947, appellants notified the Company in writing by filing suit against it that the lease was terminated. Thereafter, on Feb. 12, 1948, the Company attempted to exercise the option and tendered appellants a check for the purchase price when it filed answer and counterclaim.

It is manifest from the wording of the second offer that the option existed only so long as the lease was in force. The option was not exercised before the lease terminated, therefore it expired with the lease. It is elementary that an acceptance of an option after its expiration imposes no obligation upon the one making the offer—the time having expired before its acceptance, the option is dead. 12 Am. Jur. "Contracts" sec. 56, p. 547.

It is fundamental that in order to enable a court of equity to decree specific performance, the terms of the contract must be clear, definite, certain and complete. A greater degree of certainty is required for specific performance in equity than is necessary to establish a contract as a basis of an action for damages at law. The contract must be so definite as to leave no reasonable doubt in the mind of the chancellor as to what the parties intended before he will decree specific performance. The element of completeness denotes that the contract embraces all material terms. A contract expressed in general terms will support an action for damages, although it is too loose and inexact to warrant specific performance. Where a specific execution is sought, it is essential that the contract itself be specific and the certainty required must extend to all particulars essential to the enforcement of the contract, such as the subject matter and purpose of the contract, the parties, the consideration, the time and place of performance, terms of payment and duration of the contract. 49 Am. Jur. "Specific Performance" secs. 22-26, pp. 34-40; McKnight v. Broadway Inv. Co., 147 Ky. 535, 145 S. W. 377.

When we apply the rule set out in the above paragraph to this loosely drawn and indefinite instrument, it is manifest that it is not the character of contract that a court of equity will specifically enforce. The time it was to begin and to end was not stated. The consideration was not fully set out in the instrument as

the proof shows that in addition to the royalties appellants were to have coal for domestic purposes. The right to use the surface of the land and to use the timber was far from being definite and certain. Was such use to be limited for mining purposes only? What size and character of timber could the Company cut? The writing itself shows no precise, exact and definite agreement had been reached by the parties. To some extent this is evidenced by the contract reciting, "a full and elaborate agreement between the parties is to be later written."

The chancellor erred in granting specific performance and his judgment is reversed with directions that he enter one consistent with this opinion.