**Lillian M. LIPSKI, Appellant,**

v.

**Zeldon A. LIPSKI et al., Appellees.**

Court of Appeals of Kentucky.

April 19, 1974.

Rehearing Denied June 21, 1974.

Frank A. Garlove, Irwin G. Waterman, Louisville, for appellant.

Ben T. Cooper, Louisville, for appellees.

JONES, Justice.

Appellant, Lillian M. Lipski, widow of Max M. Lipski who died November 27, 1966, brought this action in the Jefferson Circuit Court to set aside an antenuptial agreement executed by them on November 25, 1958, within a month of their marriage on December 18, 1958. The appellees Zeldon A. Lipski and Phyllis Bordoff are Max's only children and are of a previous marriage.

Lillian alleged in her complaint that: (1) the antenuptial agreement is unenforceable because it was not executed in such a manner as to constitute a valid contract; (2) there was insufficient consideration to support the contract; (3) she believed that she had been under compulsion and undue coercion to sign the agreement; (4) she was not fully aware of her dower and statutory rights with respect to the estate of the deceased and the value thereof; (5) the contract was the result of fraud and deceit and she was overreached.

The trial court adjudged the antenupital agreement valid and awarded costs to Zeldon and Phyllis.

From this judgment Lillian appeals alleging numerous errors; we discuss only the question of the validity of the agreement.

For a proper determination of the matters presented on appeal, we deem it appropriate to set out the pertinent conditions of the antenuptial agreement, and to detail some of the circumstances relating to the execution of the agreement and the relationship of the parties prior to and subsequent to its execution.

At the beginning of the antenuptial agreement, it is provided:

"Max M. Lipski, in order to avoid any possible future misunderstanding, wishes to recite the following:

1. That he presently owns a number of pieces of real estate located in Louisville, Kentucky.

2. That he owns a great number of securities which were issued by various corporations; some of said securities are those issued by close corporations, the principal one of which is the Louisville Cycle and Supply Company in which he is one of the principal stockholders; that numerous other securities owned by him are securities listed by companies whose stocks are listed on recognized stock exchanges and some of which are traded over the counter or those of close corporations.

3. That he owns bonds, cash, receivables and other properties, and

4. That his net worth at this time is well in excess of $1,000,000.00."

It was agreed by Max and Lillian that each would release any and all claims that either of them might acquire in the estate of the other by reason of the marriage. In a provision of the agreement Lillian acknowledged that she was fully advised of

Max's financial condition prior to the execution of the agreement. The agreement also provided that if Max predeceased Lillian, she would have a claim against his estate in the amount of $25,000.00.

At the time Lillian and Max were married she was 57 and he was 65. Lillian had been married twice previously and was the mother of two children. Max was an industrious successful businessman, a widower of seven years and had accumulated an estate in excess of a million dollars. He was survived only by appellant and appellees herein.

The marriage of Max and Lillian was not that of May and December. However the record reflects that Max was ardent in his courtship of Lillian and that his endeavor was pursued with intensity of feeling and expression. Both of them knew the joys of love and the heartbreak of having lost loved ones in death, and their courtship and marriage were filled with gaiety. Their friends gave parties. It was in this atmosphere that they came to know each other and that their mutual admiration, respect and love flourished.

Lillian was not a stranger as to a widow's rights under the law. Prior to her marriage to Max, she was married to Dr. Joseph Frehling, a prominent Louisville surgeon, who died November 1, 1957. At the time she executed the antenuptial agreement, she was the executrix of Dr. Frehling's estate. Dr. Frehling's heirs had released all claims to his estate leaving her approximately $100,000.00.

The antenuptial contract was executed in the office of Mr. Herman Handmaker and was prepared by him. He was a mutual friend and was the attorney for both Max and Lillian in various legal matters. Lillian contends that she didn't read the agreement; that it wasn't explained to her and that she was unaware of its provisions. Yet the attorney who prepared the contract was one whom she looked upon as her lawyer and friend. Max was a man with a reputation of integrity and fair dealing;

Lillian was a woman of education and judgment. She admitted signing the agreement, and she was in the office of her counselor and friend for twenty or thirty minutes. Under these circumstances it is impossible to conclude that the trial court erred in holding that Lillian knew the nature and consequences of her act in signing the agreement. Concerning the execution of the agreement, Lillian testified as follows:

"Q. You did—Mr. Handmaker tell you the contents of it.

A. He started to tell me. He said, 'I'll tell you this.' The first thing he told me was that if Max predeceases me, I am to get $25,000.00. And when he said it, I said—I thought to myself, I don't understand—I didn't know exactly what to say, I was so taken aback, I thought it was a very unfair thing. He didn't go any further, because I said, 'Give me that and let me sign it and let us get out of here.' Because I wasn't going to do anything about it; I was just—I know that I wasn't going to break the engagement, I knew that, because I would be too humiliated in front of all my friends, so I just decided, well, that's it. I'll just forget about it."

The record further reflects that Lillian was knowledgeable about the contents of the agreement. She called her sister on the evening following the execution of the contract and told of her distress in getting only $25,000.00.

We conclude that there is not a scintilla of evidence of fraud, overreaching, double-dealing or deception shown in the record. Lillian was dissatisfied with the provisions made for her in the contract, and she made several unsuccessful attempts to secure more generous provisions. Cf. Harlin v. Harlin, 261 Ky. 414, 87 S.W.2d 937 (1935). However, that is not to say that she was defrauded or overreached.

Daniels v. Banister, 146 Ky. 48, 141 S.W. 393 (1911).

Viewing the antenuptial contract made between Max Lipski and Lillian Lipski as a whole, and all the circumstances relating thereto, we are of the opinion that the trial court clearly interpreted the intent of the parties to the contract, and properly held it valid.

We have reviewed other assignments of error, and they are without merit.

The judgment of the trial court is affirmed.

OSBORNE, C. J., and JONES, MILLIKEN, PALMORE, REED and STEPHENSON, JJ., sitting.

All concur.