**Nancye CALLAHAN, Plaintiff,**

v.

**HUTSELL, CALLAHAN & BUCHINO, P.S.C., REVISED PROFIT SHARING PLAN et al., Defendants.**

**Civ. A. No. C91–0616–L(J).**

United States District Court, W.D. Kentucky, Louisville Division.

Feb. 18, 1992.

Denying Motion to Amend May 14, 1992.

William E. McAnulty, Jr., Janet P. Jaku-bowicz, Martin S. Weinberg, Greenebaum, Doll & McDonald, Louisville, KY, for Nancye Callahan.

Lisabeth Hughes Abramson, Ivan J. Schell, James R. Cox, Hirn Reed Harper & Eisinger, Louisville, KY, for Hutsell, Callahan & Buchino, P.S.C. Revised Profit Sharing Plan and Revised Money Purchase Pension Plan, and Hutsell, Callahan & Buchino, P.S.C.

Robert W. Griffith, Stites & Harbison, Louisville, KY, for First Kentucky Trust Co. of Louisville.

Eugene L. Mosley, Mosley, Clare & Townes, Louisville, KY, for Courtney Callahan, Christopher Callahan and Mary C. Callahan.

## MEMORANDUM OPINION

JOHNSTONE, District Judge.

This matter is before the court on cross motions for summary judgment filed by defendant First Kentucky Trust Company ("FKTC") defendant Hutsell, Callahan & Buchino, P.S.C. ("Hutsell, Callahan") and plaintiff, Nancye Callahan. For the reasons stated, plaintiff's motion is granted in part, defendant Hutsell, Callahan's motion is granted in part and FKTC's motion is granted in part.

### I. Background

Nancye O. Harcourt ("Nancye") and Edward L. Callahan ("Ed") were married on March 8, 1991. Two days prior to their marriage, Nancye and Ed entered into an Antenuptial Agreement (the "Antenuptial Agreement") delineating the rights and obligations of the parties in and to their respective individual and marital property. This Agreement provided, in pertinent part:

ED and NANCYE desire that their impending marriage not affect the disposition of their separate property at the termination of their marriage, preferring

instead to set forth herein how their separate property should be disposed of. . . .

2. NANCYE understands, acknowledges and accepts that (a) the property and interests in property set forth on Exhibit B attached hereto and made a part hereof, are, and will always remain, the separate property of ED, whether determined under the laws of Kentucky or any other jurisdiction, because ED acquired such property prior to the date of this Agreement and (b) wages, earnings and other compensation which ED may acquire subsequent to executing this Agreement ... is, and will always remain, ED's separate property (all of which is referred to collectively herein as "ED's Separate Property") ...

3. NANCYE hereby waives, releases and relinquishes any and all claims and rights of every kind, nature or description that she may now have or hereafter acquire by reason of her marriage to ED, or on account of any relationship, formal or informal, with ED prior to their marriage, as wife, surviving spouse, heir of ED or otherwise, in ED's Separate Property ...

9. Nothing herein shall prevent ED or NANCYE from voluntarily transferring property to the other, by Last Will and Testament or other testamentary documents, or by intervivos transfer, or otherwise, whether prior or subsequent to their marriage ...

15. (a) Effective when ED and NANCYE are married, NANCYE consents to (i) ED's election to waive, (ii) ED's election, if any, to revoke such waiver, and (iii) any election by ED to subsequently waive, a qualified joint and survivor annuity form of benefit under any plan of deferred compensation to which section 401(a)(11) of the Internal Revenue Code of 1986 ("Code") of Section 205 of the Employee Retirement Income Security Act of 1974 ("ERISA") shall apply and to which ED shall currently or hereinafter be deemed a vested participant within the meaning of Section 417(f)(1) of the Code and Section 205(h)(1) of ERISA. NANCYE further agrees that ED may designate any beneficiary ED desires as

to any qualified plan death benefit if ED dies. NANCYE hereby acknowledges that as a result of such consents and waivers she will not be entitled to a death benefit under such plans, even if NANCYE and ED are married to each other at ED's death. NANCYE hereby agrees to execute all such further documents requested by ED to evidence the consents and waivers herein made, in the form and manner requested by ED. NANCYE specifically agrees to execute the attached forms as to ED's interest in the Hutsell, Callahan & Buchino, P.S.C. plan and ED's Individual Retirement Account as soon as possible after marrying ED. . . .

18. In the event of ED's death during the marriage of ED and NANCYE, ED agrees to provide a sum equal to $100,-000 to NANCYE, said sum to be paid to NANCYE as soon as practical after ED's death. . . .

20. This Agreement contains the entire understanding of ED and NANCYE. No representations, warranties or promises, other than those expressly set forth herein, have been made by ED to NANCYE, or NANCYE to ED, or to either one of them on the other's behalf by any person. . . .

In addition to executing the Antenuptial Agreement on March 6, Ed amended the Edward L. Callahan Revocable Trust Agreement (the Trust") to provide, in the event of his death, that the $100,000 referred to in paragraph 18 of the Antenuptial Agreement be payable to Nancye.

On May 10, 1991, some two months after his marriage to Nancye, Ed Callahan died. For several years prior to his death, Ed participated in both the Hutsell, Callahan & Buchino Profit Sharing and Money Purchase Pension Plans (the "Plans"). The Plans are defined contribution employee pension benefit plans established under and governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001, 1002(2) ("ERISA") and designed as qualified plans under section 401(a) of the Internal Revenue Code, 26 U.S.C. 401(a). The beneficiary designation forms filed with

the administrator of these Plans in 1988 designated the trustee of the Trust—FKTC—as beneficiary.

In addition to obtaining a vested right to benefits under the Plan, Ed entered into an Employment Agreement (the "Employment Agreement") with Hutsell, Callahan which provided, *inter alia,* that, in the event of his death, continuing compensation payments would be made for a period of 24 months to his *surviving spouse* or, if no spouse survived him, to his estate.

Following Ed's death, Nancye demanded that the benefits attributable to Ed's account under the Plans together with the *continuing compensation* payments under the Employment Agreement be paid to her. The administrator of the Plans, however, refused to comply with her demand asserting that, when she executed the Antenuptial Agreement, she waived any interest to which she would otherwise have been entitled under the Plans and Employment Agreement.

In addition to seeking benefits under the Plans and continuing compensation under the Employment Agreement, Nancye demanded the $100,000 payable under the terms of the Antenuptial Agreement. Although agreeing to pay $5,000 to Nancye, FKTC rejected Nancye's request for the remaining $95,000 and deposited that sum in the registry of the court. FKTC supported its action by asserting that Nancye was seeking to selectively enforce the Antenuptial Agreement by requesting the full $100,000 while overlooking her purported waiver of Ed's benefits under the Plans and the Employment Agreement.

It is undisputed that, following her marriage to Ed, Nancye was never provided with nor did she execute a written waiver or consent to designation of beneficiary form as contemplated by paragraph 15 of the Antenuptial Agreement. Nancye suggests that this fact standing alone entitles her to the funds held in Ed's account under the Plans. FKTC contends that Nancye is not entitled to Ed's accounts under the Plans and, under state law, should be compelled by the court to execute a designation of beneficiary form to be provided by FKTC.

The issues raised in the cross motions for summary judgment are:

1. Whether, by executing the Antenuptial Agreement, Nancye Callahan waived any right she would have otherwise had to Ed Callahan's account under the Plans;

2. Whether Nancye Callahan should be required, at this juncture, under the terms of the Antenuptial Agreement, to execute waiver forms relinquishing any right she might otherwise have to Ed Callahan's account under the Plans and the Employment Agreement;

3. Whether, by executing the Antenuptial Agreement, Nancye Callahan waived any right she would have otherwise had to continuing compensation payments under the terms of the Employment Agreement; and

4. Whether Nancye Callahan is entitled, under paragraph 18 of the Antenuptial Agreement to the $95,000 deposited in the registry of the court.

### A. *Nancye Callahan's Rights Under the Pension and Profit Sharing Plans.*

 Nancye argues that Ed's failure to request that she execute waiver and designation of beneficiary forms following their marriage relinquishing any entitlement to the proceeds held in his accounts under the Plans leads to the conclusion that, as a matter of federal law, she is entitled to the proceeds held in such accounts. FKTC contends that the Antenuptial Agreement itself meets the requirements of 29 U.S.C. 1055(c)(2)(A) and, by signing that agreement, Nancye waived any right to Plan proceeds.

29 U.S.C. 1055(a)–(c) provides, in pertinent part:

**(a) Required Contents for Applicable Plans.** Each *pension plan* to which this section applies shall provide that—

 . . . . . .

(2) in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a quali-

fied preretirement survivor annuity shall be provided to the surviving spouse of such participant.

. . . . .

(c)(1) A plan meets the requirements of this section only if—
(A) under the plan, each participant—
(i) may elect at any time during the applicable period to waive the qualified joint and survivor annuity form of benefit or the qualified preretirement survivor annuity form of benefit (or both)

. . . . .

(2) Each plan shall provide that an election under paragraph (1)(A)(i) *shall not take effect unless*—
(A)(i) *the spouse of the participant consents in writing to such election,* (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public ... (*emphasis added*). *see also* 26 U.S.C. 401(a)(11) and 26 U.S.C. 417

The Profit Sharing Plan—an individual account plan—was not required to provide a qualified preretirement survivor annuity. The Money Purchase Pension Plan, however, was required to and did provide a qualified preretirement survivor annuity to the spouse of a participant who dies before receiving benefits. In order to determine whether Nancye waived her potential interest in Ed's account under the Plans, the court must look to the spousal consent and waiver provisions in 29 U.S.C. 1055, 26 U.S.C. 401 and 26 U.S.C. 417 and controlling case law.

The provisions of 29 U.S.C. 1055, 26 U.S.C. 401 and 26 U.S.C. 417 require that the surviving spouse of a participant in an ERISA pension plan be provided with a qualified joint and survivor annuity or a qualified preretirement survivor annuity (in the case of the Pension Plan). In order for a spouse to waive his or her right to such pension benefits, the spouse must execute a written consent/waiver. The consent must provide the name of the designated beneficiary and the consent must be witnessed by the plan representative or a notary.

In *Fox Valley & Vicinity Const. Workers Pension Fund v. Brown,* 897 F.2d 275 (7th Cir.1990), the court considered the issue of whether a divorced spouse who was designated as a beneficiary of a pension fund prior to divorce was entitled to receive pension fund benefits despite a provision in a divorce settlement agreement waiving any right to such benefits.[1] In concluding that a waiver in the divorce property settlement agreement satisfied ERISA, the Seventh Circuit determined that even though 26 U.S.C. 417(a)(2) specifies the procedure necessary to assign benefits, the procedure need not be followed when a nonparticipant is waiving such an interest. In *Fox Valley,* however, the waiver and consent relied upon by the court was executed at a point in time in which the consenting spouse was married to the participant.

In *McMillan v. Parrott,* 913 F.2d 310 (6th Cir.1990), a case arising from this court, the Sixth Circuit Court of Appeals considered the question of whether a divorce settlement agreement under which each spouse relinquished "any and all" claims he or she might have against the other, divested the former spouse of any right to benefits under a pension plan in which the spouse was named as a beneficiary. In concluding that the state divorce settlement agreement was not controlling, the court stated:

> The district court appears to have based its decision on state law. This we believe was incorrect. Section 1144(a) of ERISA provides that federal law shall supersede all state laws which "relate to" an ERISA plan ... The designation of ben-

---

**1.** The property settlement agreement provided: The parties each waive any interest or claim in and to any retirement, pension, profit-shar-
ing and/or annuity plans resulting from the employment of the other party. *Id.* at 277.

eficiaries plainly relates to these ERISA plans, and we see no reason to apply state law on this issue ...

We believe this resolution fulfills the intent of Congress that ERISA plans be uniform in their interpretation and simple in their application ... A participant is master of his own ERISA plan ... Under the plans, we determine his intent by the designation on file at the time of his death ...

If the designation on file controls, administrators and courts need look no further than the plan documents to determine the beneficiary, thus avoiding expensive litigation as has occurred in the case before us.

 It follows from the *McMillan* decision that, in this circuit, the court must look to the designation of beneficiary form on file with the plan administrator to determine the appropriate beneficiary of ERISA pension plan benefits. Further, if, as in this case, it is argued that the participant's surviving spouse waived his or her interest in an ERISA pension plan in favor of a designated beneficiary, the *McMillan* court and the *Fox Valley* court would require such waiver to be specific and to meet the requirements of 29 U.S.C. 1055.

Here, Nancye's purported waiver of her interest in the Plans was contained in an Antenuptial Agreement entered into *prior* to her marriage to Ed. Further, the pertinent provision of the Antenuptial Agreement, paragraph 15, requires Nancye to "consent to" Ed's election to waive her right to benefits under the Plans. Paragraph 15 further provides that "Nancye ... acknowledges that as a result of such *consents and waivers* she will not be entitled to a death benefit under such plans...." Nancye, however, was never presented with any consent or waiver form or document as contemplated by paragraph 15. Accordingly, Nancye never effectively waived any interest she held as a beneficiary under the Plans. 29 U.S.C. 1055.

FKTC relies upon *In re Estate of Hopkins*, 214 Ill.App.3d 427, 158 Ill.Dec. 436,

574 N.E.2d 230 (2 Dist.1991). While the court in *Hopkins* held that an antenuptial agreement signed prior to marriage under which a spouse waived any right she may have had in an ERISA pension plan was enforceable, the reasoning employed in reaching that result is flawed. The *Hopkins* court (i) rejected the argument that the antenuptial agreement was ineffective on the grounds that the claimant was not a "spouse" at the time the agreement was signed, (ii) rejected Treasury Reg. 1.401(a)–20 providing that consent in an antenuptial agreement cannot satisfy the spousal consent requirements, (iii) concluded that *McMillan* was inapplicable, and (iv) concluded that *Fox Valley* does not prohibit an antenuptial agreement from satisfying the spousal consent requirements. Each of these findings were, in the opinion of this court, aimed at reaching a result which the *Hopkins* court sought to achieve irrespective of ERISA.

In short, the court, under the law of this circuit, finds that Nancye Callahan did not waive her interest in Ed Callahan's pension and profit sharing accounts under the Plans by virtue of the purported *waiver* set forth in the Antenuptial Agreement. Paragraph 15 of the Antenuptial Agreement contemplates that Nancye would execute consents and waivers if such documents were provided to her. It is undisputed that no such documents were presented to Nancye and Nancye signed the Antenuptial Agreement prior to her becoming Ed's spouse. Accordingly, the court finds that any such premarital waiver by an "about to be spouse" is ineffective under 29 U.S.C. 1055. For these reasons, the provisions of the Antenuptial Agreement do not serve to waive any interest Nancye Callahan has as a surviving spouse under Ed's accounts under the Plans. Since Nancye was Ed's spouse on the date of his death and did not consent to his designation of FKTC as the beneficiary of his accounts under the Plans in accordance with the requirements of ERISA, Ed's interest in the Plans must be paid to Nancye.[2]

---

**2.** *See* 29 U.S.C. 1055(g)(2)(B) permitting a surviving spouse to elect a lump-sum present value disbursement of an annuity.

FKTC's argument that Nancye should be forced, under the doctrine of specific performance, to sign a consent and waiver form relinquishing her interest in the Plans in favor of FKTC is rejected. While, as FKTC suggests, Kentucky law requires enforcement of contracts whose terms are clear, definite, certain and complete, *Warren v. Cary–Glendon Coal Co.*, 313 Ky. 178, 230 S.W.2d 638 (1950), the contractual provision which FKTC seeks to enforce—paragraph 15 of the Antenuptial Agreement—is not clear, definite, certain and complete. Paragraph 15 contemplates that Nancye will execute all waivers and consents presented to her by Ed and will execute as soon as possible after marrying Ed, forms attached to the Antenuptial Agreement "as to Ed's interest in the" Plans. Although his attorney repeatedly requested that he do so, Ed ever presented any waiver or consent forms to Nancye and there is nothing in the record to show that such forms were attached to the Antenuptial Agreement. To accept FKTC's argument and require Nancye to execute a waiver and consent form relinquishing her interest in Ed's account under the Plans, would require an assumption that Ed intended to present Nancye with waiver and consent forms and that such forms would name FKTC as the beneficiary of Ed's account under the Plans. While this result may well reflect Ed's intention at the time of his death, the court would nonetheless be required to guess about the intention of Ed as to the disposition of his accounts under the Plans. Accordingly, FKTC's specific performance argument, while creative, is rejected.

Although the result reached in this opinion may well be unfair and contrary to the true intention of Ed Callahan concerning the distribution of his estate to his children and mother, in this circuit the spousal consent requirements of 29 U.S.C. 1055 control.

B. *Nancye Callahan's Right to Continuing Compensation under the Employment Agreement.*

Having determined that Nancye did not waive her right to recover benefits under Ed's pension and profit sharing accounts, the court now turns to the question of whether and to what extent Nancye waived any right to continuing compensation payments under the Employment Agreement.

The Employment Agreement provides, in pertinent part:

5. *Continuing Compensation.* The Employer shall pay to the Employee, his surviving spouse, or his estate, as the case may be, continuing compensation as hereinafter provided.

(a) *Commencement.* The right to such continuing compensation shall arise upon the first of the following events to occur, hereinafter referred to as the "date of commencement:"

(1) Death of Employee.

. . . . .

(c) *Manner of Payment....* All continuing compensation under the terms of this paragraph 5 shall be paid to the Employee; provided, however, ... if the Employee shall not be living when such payments begin, any remaining amounts which would otherwise have been payable to the Employee shall be paid in the same manner to his surviving spouse; provided, further, however, in the event the Employee dies leaving no spouse surviving him, or in the event his surviving spouse dies while receiving payments under the terms of this paragraph 5, any remaining amounts which would otherwise have been payable to such surviving spouse under the terms of this paragraph 5 shall be paid in the same manner to the estate of the Employee.

The continuing compensation to be paid under the Employment Agreement is based upon the employer's accounts receivable, cash on hand and other factors set forth in the Agreement and is to be paid for a period of 24 months.

Paragraph 2 of the Antenuptial Agreement provides:

NANCYE understands, acknowledges and accepts that ... (b) wages, earnings and other compensation which ED may acquire subsequent to executing this Agreement ... is and will always remain, ED's separate property (all of

which property is referred to collectively herein as 'Ed's Separate Property').

Paragraph 3 of the Antenuptial Agreement provides:

NANCYE hereby waives, releases and relinquishes any and all claims and rights of every kind, nature or description that she may now have or hereafter acquire by reason of her marriage to ED, or on account of any relationship, formal or informal, with ED prior to their marriage, as wife, *surviving spouse,* heir of ED or otherwise, in *ED's Separate Property* under the present or future laws of Kentucky or any other competent jurisdiction, including but not limited to:

. . . . . .

(k) All rights whatsoever which she might now have or hereafter otherwise acquire (whether as wife, surviving spouse, heir of ED, or otherwise) in all property of every nature that ED now owns or may hereafter (including during the said marriage) own, become seized of or acquire.

■ Absent fraud, overreaching or deception, Kentucky courts routinely and readily enforce Antenuptial Agreements. *e.g., Forwood v. Forwood,* 86 Ky. 114, 5 S.W. 361 (1887); *Lipski v. Lipski,* Ky., 510 S.W.2d 6 (1974).

■ Nancye argues that the failure of the Antenuptial Agreement to specifically reference the Employment Agreement, leads to the conclusion that she did not waive her right to continuing compensation as a *surviving spouse* under such agreement. Nancye contends that the general waiver in the Antenuptial Agreement cannot serve to invalidate Ed's specific designation of his "surviving spouse" as beneficiary of the continuing compensation payments. In support of this argument, Nancye relies upon the case of *Ping v. Denton,* Ky., 562 S.W.2d 314 (1978) in which the Kentucky Supreme Court held that, absent a provision in a divorce decree regarding the disposition of proceeds from a life insurance policy, a former spouse named as a beneficiary under such a policy was entitled to benefits.

The court finds, however, that Nancye specifically waived any right to continuing compensation payments when she executed the Antenuptial Agreement. The Antenuptial Agreement specifically provides that Ed's compensation is and will always be considered his "separate property." Nancye specifically waived any interest she may have had or acquired as a surviving spouse to Ed's "separate property." Accordingly, regardless of the fact that the Antenuptial Agreement fails to specifically mention the Employment Agreement and, as discussed above, fails to result in a waiver of Nancye's right as a surviving spouse to Ed's pension and profit sharing accounts, the Antenuptial Agreement clearly and unambiguously evidences Nancye's waiver of any interest in continuing compensation payments under the Employment Agreement. Accordingly, defendants are entitled to summary judgment on this issue.

C. *Nancye Callahan's Right to the Sum of $100,000 Under the Terms of the Antenuptial Agreement.*

■ The final issue raised in this action involves the right of Nancye Callahan to the sum of $100,000 from Ed's estate. FKTC paid Nancye $5000 of the $100,000 payable under the terms of the Antenuptial Agreement and deposited the remainder in the registry of the court. FKTC took this approach on the theory that Nancye, by demanding both the $100,000 under the Antenuptial Agreement and the proceeds of the Plans, was seeking to enforce a portion of the Antenuptial Agreement which provided a lump-sum payment to her while rejecting the provisions of the Agreement under which she purportedly waived her interest in Ed's pension and profit sharing accounts.

Based upon the conclusions reached in section A above, the court has determined that Nancye Callahan is entitled to recover the monies held in Ed's pension and profit sharing accounts. This finding defeats FKTC's argument that Nancye was attempting to selectively enforce the terms of the Antenuptial Agreement.

Accordingly, finding no reason for FKTC or the court to withhold the remaining $95,-000 payable to Nancye under the terms of the Antenuptial Agreement, the court will order that this sum, which was previously deposited in the registry of this court, together with any interest accumulated thereon, be withdrawn and paid to Nancye Callahan.

An appropriate order accompanies this memorandum opinion.

## MEMORANDUM

Before the court are motions by Plaintiffs and Defendants to alter or amend the judgement entered in this action on February 24, 1992. The Defendants ask the court to vacate that part of the February 24 order granting partial summary judgment in favor of the Plaintiff. The Plaintiff seeks an amendment awarding her costs and attorney's fees pursuant to 29 U.S.C. § 1132(g). Both motions will be denied.

In an order entered February 24, 1992 the court granted the Plaintiff, Nancye Callahan, summary judgment on the issue of her entitlement to the proceeds held in the pension and profit sharing plan accounts of her late husband, Ed. In reaching that decision, the court was confronted with the following novel legal question: Can a valid antenuptial agreement supply the necessary spousal consent for a waiver of entitlement to ERISA plan proceeds under 29 U.S.C. § 1055? This court answered in the negative.

The Defendants do not ask the court to reconsider the legal question decided. Rather, they attempt to offer evidence that Nancye had been requested to sign further documents concerning her waiver and consent to the designation of another beneficiary. Because Nancye was obligated to sign such documents under the antenuptial agreement, they argue that the court should find an effective waiver of her rights to the ERISA plan proceeds. Defendants assert that a genuine issue of fact remains on this point.

In reviewing the grant of summary judgment to Nancye on the issue, the court will adhere to the guidelines derived from the 1986 Supreme Court trilogy: *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and summarized by the Sixth Circuit in *Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989). The court's decision to grant judgment for the Plaintiff was based upon the absence of one element essential to the Defendant's case under ERISA; i.e. Nancye's signature on a document of waiver post marriage. The Defendants did not present evidence of any such signature, nor do they offer sufficient evidence now.

■ The Sixth Circuit made clear in *McMillan v. Parrott,* 913 F.2d 310 (6th Cir.1990) that the statutory waiver requirements of ERISA are to be strictly complied with. The statute requires a signature by a spouse. The affidavits offered by the Defendants do not create a sufficient issue of fact regarding the signature. At most, they present evidence from which a jury might infer Ed's intent regarding the Plan proceeds. Intent is irrelevant to the court's holding. Without some affirmative evidence, the Defendants' case does not present a jury issue. This court is acutely aware of the apparent dissonance between this outcome and the intent of Ed Callahan. We are also mindful of the logic favoring a policy of informed premarital agreement concerning the distribution of assets. However, the mandate to give effect to an antenuptial waiver of benefits under ERISA must come from Congress or a higher court. Insufficient evidence has been presented to create an issue of fact regarding the existence of a signed consent and waiver. The Defendants' motion to vacate the judgment is denied.

■ The Plaintiff's motion for attorney's fees and costs will be denied. Such an award is discretionary under 29 U.S.C. § 1132(g)(1). In considering the award of

costs and fees, the Sixth Circuit endorses a five factor analysis:

(1) The degree of the opposing party's culpability or bad faith;

(2) The ability of the opposing party to satisfy an award of attorney's fees;

(3) Whether an award of fees against the opposing party would deter others from acting in similar circumstances;

(4) Whether the party requesting fees sought to benefit all participants and beneficiaries of a multi-employer plan or to resolve a significant legal question; and

(5) The relative merits of the parties' position.

*Sweet v. Consolidated Aluminum Corp.,* 913 F.2d 268 (6th Cir.1990). In weighing these factors, the court concludes that no award is warranted. Defendants engaged in no culpable conduct in this litigation. The Defendant First Kentucky Trust had a fiduciary obligation to protect the assets in the fund and took an entirely logical legal position in opposition to the Plaintiff. This is not the type of conduct which should be deterred or sanctioned. The motion of Plaintiff to alter or amend is denied.