NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0041n.06

Case No. 23-5620

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jan 29, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| MICHAEL H. PONDER, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF |
| HANS-PETER WILD, | ) | KENTUCKY |
| Defendant-Appellee. | ) | OPINION |

Before: SILER, MATHIS, and BLOOMEKATZ, Circuit Judges.

**MATHIS, Circuit Judge.** Michael Ponder filed suit to enforce an alleged contract between himself and Hans-Peter Wild, who Ponder claims promised to pay him $3 million if he sold Wild's company for a "premium price." The district court granted summary judgment to Wild. Because the supposed terms of this agreement were too indefinite to form a contract, we affirm.

## I.

Wild is the former majority shareholder and chairman of the board of directors of the Swiss company WILD Flavors GmbH ("Wild Flavors"). Ponder became Wild Flavors's CEO on May 1, 2011. Ponder and Wild served in their respective roles until Wild Flavors was sold.

In 2013, Ponder and Wild met at Wild's condo in northern Kentucky. Wild had recently learned that the German government suspected him of tax evasion, and he feared he would be arrested if he traveled to Germany. This development convinced Wild that he needed to sell Wild

Flavors to protect his business interests. So Wild told Ponder that if Ponder could "get a premium for the company," Wild would "pay [Ponder] a premium over and above" his existing CEO salary and bonuses. R. 132-2, PageID 3086. Wild later reiterated this promise when he and Ponder had dinner at Wild's house in Zug, Switzerland, telling Ponder "I will pay you 3 million dollars" if Ponder sold the company for a premium price. *Id.* at 3106. Ponder testified that Wild "was expecting" the sale to fetch between $1.5 and $2 billion. R. 144-4, PageID 4335.

On October 1, 2014, the Chicago-based food company Archer Daniels Midland purchased Wild Flavors for $3 billion. Ponder assisted with the sales process, giving management presentations and discussing the deal with potential buyers' executives. He was also instrumental in closing the sale; Ponder persuaded Wild to accept Archer Daniels Midland's offer when Wild tried to hold out for more money. Ponder and the rest of Wild Flavors's management team received large contractual bonuses for the successful sale; Ponder's bonus totaled $9 million. But Wild never paid Ponder the additional $3 million for helping to sell Wild Flavors.

In 2019, Ponder sued Wild in state court for breach of an oral contract, and Wild removed the case to federal court. After about three years of discovery, Wild moved for summary judgment on Ponder's sole claim. In April 2023, the district court granted summary judgment to Wild. After the district court denied Ponder's motion to alter the judgment, Ponder timely appealed.

**II.**

We review a district court's grant of summary judgment de novo. *See Puskas v. Delaware Cnty.*, 56 F.4th 1088, 1093 (6th Cir. 2023). Summary judgment is appropriate where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023). We view

all evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Palma v. Johns*, 27 F.4th 419, 427 (6th Cir. 2022).

Subject-matter jurisdiction in this case is based on diversity of citizenship and, therefore, we apply the substantive law of the forum state. *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013). Here, the parties agree that Kentucky law applies.

**III.**

Ponder brings a breach-of-contract claim against Wild. Under Kentucky law, the elements of a claim for breach of contract are "1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cnty. Gov. v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). "[A]n enforceable contract must contain definite and certain terms setting forth promises of performance to be rendered by each party." *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997) (citing *Fisher v. Long*, 172 S.W.2d 545 (Ky. 1943)). If any "essential term" is indefinite or "yet to be agreed on, there is no contract." *Brooks v. Smith*, 269 S.W.2d 259, 260 (Ky. 1954). "[I]t is essential that the contract [] be specific and the certainty required must extend to all particulars essential to the enforcement of the contract," including what a party must do to receive payment. *Warren v. Cary-Glendon Coal Co.*, 230 S.W.2d 638, 640 (Ky. 1950).

Viewing the evidence in the light most favorable to Ponder, as we must, Wild promised to pay $3 million to Ponder if Ponder secured a "premium price" for the sale of Wild Flavors. Ponder believed that Wild expected to sell Wild Flavors for $1.5 billion to $2 billion.

No one disputes that "premium price" is an essential term of Ponder and Wild's agreement. Nonetheless, "premium price" is not a "definite and certain" term in these circumstances. *Kovacs*, 957 S.W.2d at 254. Nothing in the record shows that the parties agreed on how to quantify

"premium price," making it unclear exactly what sales price Ponder had to obtain for Wild Flavors to receive his bonus. Ponder suggests that a "premium price" was any amount over $2 billion, Wild's expected sales price. But there is no evidence in the record that Wild expected this price other than Ponder's personal speculation. And no record evidence indicates that Wild considered a "premium price" to be any price above his expectations. Moreover, the dictionary definition of "premium" is "a sum over and above a regular price." *Premium*, MERRIAM-WEBSTER DICTIONARY, www.merriam-webster.com/dictionary/premium (last visited Dec. 8, 2023). Ponder never specifies the regular price of Wild Flavors, nor does he argue that there was an understood method for determining that price. Without record evidence suggesting that the parties had a mutual understanding of the regular price or the expected price, there is no way to ascertain the premium price. This lack of specificity on what Ponder had to do to trigger Wild's performance dooms his claim. *See Warren*, 230 S.W.2d at 640.

Ponder resists this conclusion and argues that summary judgment is inappropriate because "[t]he question of the existence of a contract is a question of fact for the jury to answer." *Audiovox Corp. v. Moody*, 737 S.W.2d 468, 471 (Ky. Ct. App. 1987). That is correct to the extent that the facts supporting or opposing contract formation are disputed. But whether the facts, even construed in Ponder's favor, demonstrate that Ponder and Wild formed a legally binding contract is a question of law for the court to resolve. *Univ. of Ky. v. Regard*, 670 S.W.3d 903, 911 (Ky. 2023). In determining whether parties have formed a contract, courts consider whether the parties' purported agreement contains "[t]he essential elements of a valid contract"—offer and acceptance, complete and definite terms, and consideration. *Britt v. Univ. of Louisville*, 628 S.W.3d 1, 5 (Ky. 2021). We are not deciding whether Wild actually offered to pay $3 million to Ponder to secure a premium sales price. A jury would determine whether Wild and Ponder's conversations happened

as Ponder claims they did.  *Cf. Hartford Accident & Indem. Co. v. Middlesboro–LaFollette Bus Line, Inc.,* 357 S.W.2d 671, 673 (Ky. 1962) ("[W]here parties differ as to the terms of an express contract and there is evidence . . . to support the claim of each of them, it is for the jury to determine what the contract term in question is.").  A jury would not, however, decide the legal question of whether the terms of Wild and Ponder's agreement were complete and definite enough to form a valid contract.  *See Versailles Farm Home & Garden, LLC v. Haynes*, 647 S.W.3d 205, 209 (Ky. 2022) (holding that the "issue of contract formation" should be decided as a matter of law when "the relevant facts are undisputed").

Because we hold that the terms of the parties' agreement were too indefinite to form a contract, we need not decide whether the agreement also lacked consideration.

## IV.

For these reasons, we **AFFIRM** the district court's judgment.