## Fisher et al. v. Long.

June 22, 1943.

Leon Seidman for appellants.

Watson Clay for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Appellants and appellee, on October 9, 1939, entered into a written agreement in the form of a letter proposing exchange of real estate in Jefferson County. The document insofar as pertinent reads:

"I will take for my property at Anchorage, Ky., except 2-18/100 acres or less, the property located at the northeast corner of Meadow Road and Taylorsville Road, and $4,000. Both properties are now subject to mortgages and the differences in the mortgages, and any other liens are to be adjusted in cash.

"It is further understood that the mortgage on my property is with a personal friend, which mortgage cannot be assumed. I will include the refrigeration in the house, the gas stove, installation, screens, shades, etc., * * * Each party * * * to give a general warranty and subject only to existing restrictions and building ordinances. Possession of the respective properties is to be given not sooner than 30 days after date of deed.

"Thomas Fisher."

"Unless accepted by twelve o'clock noon, Monday, October 9, 1939, this proposition is void.
"Rejected October 7, 1939. However, I will give $3,000 cash difference, not including stove and refrigeration. This offer expires October 14, 1939.

"W. R. Long.

"Accepted October 9, 1939.

"Thos. C. Fisher
"Billie H. Fisher."

Shortly thereafter Fisher and wife tendered a duly executed deed to Long, conveying to him the Anchorage property. The consideration for the transfer was the conveyance of lot No. 224, Broadmeade subdivision, and $9,015.77, the total amount of the mortgage, interest and liens upon the Fisher property as of date of deed, and $3,309.58. Appellee refused to accept the deed, and in February 1940 Fisher and wife filed petition, in which they set up the contract and Long's refusal to accept the deed, to execute a deed to his property, and otherwise comply.

Plaintiff alleged that the reasonable value of Long's property was $12,000, and of their property, together with the cash which W. R. Long "agreed to convey and pay to plaintiffs, was $15,000, or $2,000 more than the reasonable market value of their property." Plaintiffs elected to treat the contract as breached, and that thereby plaintiffs were damaged in the sum of $2,000. Long demurred to the petition.

By an amendment later filed, plaintiffs alleged that it was agreed that liens affecting each piece of property would be ascertained from parties holding said liens on the date of closing, and that any difference between the amounts would be adjusted and paid by the party entitled thereto in cash. They alleged that on date of tender of deed the total of the liens affecting the properties as ascertained was $9,015.77 as against plaintiffs' property, and $9,325.35 against defendant's, hence there was due under the agreement $309.58, which defendant had promised to pay at the time of plaintiff's acceptance of the counter offer. The court first overruled demurrer, but later set aside the order and sustained it as to the petition as amended; plaintiffs declining to plead further the petition was dismissed.

There is in the record memorandum opinion setting out the grounds upon which the court sustained the demurrer. After analysis of the contract the court construed it to mean that: (1) Long by his counter-proposition agreed to pay $3,000 cash difference rather than $4,000 as proposed by Fisher, following Long's rejection. (2) That the difference between the amounts of the mortgages and other liens would be settled in cash. (3) Long would pay off the mortgage on plaintiff's property. We agree that this is a reasonable construction, and not difficult of comprehension by either party.

However, the court quoted that portion of the contract which pointed out that both properties were known by both parties to be under a mortgage, and specifically to the phrase relating to the adjustment of lien differences. The court remarked that when the case was first out on demurrer to the petition he was concerned mainly with the Statute of Frauds, but was "then and now convinced that the contract satisfied the statute."

As we read the briefs of contending parties, there is not presented any argument that the contract comes within the inhibitions of the statute. Afer expressing the belief, supra, the court asks "But is the contract such as may be enforced or sued on for breach?" and we quote the answering conclusion:

"The writing evidences an agreement in principle but reserves something for future ascertainment. The agreement as written is incomplete, although satisfying the Statute of Frauds. To be complete the difference (2 supra) between the amounts of the respective mortgages, and other liens would have to be adjusted and accepted by both parties. The thought applies also to the amount of the mortgage on plaintiffs' property, which Long was to pay off. It is not enough that the petition states that $309.58 is 'the difference between the liens affecting the property of plaintiff and those affecting the property of defendant.' It is not alleged that this stated difference had been 'adjusted,' that is to say, determined by both parties. Nor is it sufficient that the deed which plaintiffs tendered defendant recites $9,115.77 as the amount of the mortgage on plaintiffs' property. It is not alleged that this amount was agreed upon.

"The original contract—without agreement as to the matters to be later determined—is too indefinite to support the action. As the matter now stands, defendant was justified in refusing to accept the deed offered."

As we read the opinion, it is taken that the court found that "without agreement as to the matters to be later determined," the contract was indefinite, as suggested in a second memorandum. Further, that the fact that the amended petition fixed the difference, leaving a balance in favor of Fisher, was not sufficient since the

petition did not show that Long had participated in or agreed to the ascertainment of the differences, and that necessarily any balance would have to be agreed upon; that the balance was based on an ex parte calculation. The court suggested that the contract was not enforceable, "until and unless the lien differences were adjusted by mutual action," and after discovery of the amount, payment of balance falling on one of the parties.

The rule is that to be enforceable either in law or equity, a contract must be fairly definite and certain; that the promises and performances to be rendered by each party are reasonably certain. Klein v. Citizens Union Nat. Bank, 281 Ky. 650, 136 S. W. (2d) 770; Fowler's Bootery v. Selby Shoe Co., 273 Ky. 670, 117 S. W. (2d) 931. In reaching a determination as to definiteness and intention of the parties, the whole contract must be considered and be given practical interpretation. Walker & Co. v. Lewis, 267 Ky. 107, 101 S. W. (2d) 685. Applying these rules, we conclude that the contract was plain enough in its terms; that each party should have had no difficulty in understanding what was intended.

It is admitted by demurrer that the property of the respective parties was under mortgage or other liens; that these liens were to be adjusted in cash, and Fisher's mortgage could not be assumed. The offer carried a proposal of payment of $4,000 in cash to Fisher. Long rejected the offer but added the words: "However, I will give $3,000 cash difference." This undoubtedly meant that he, Long would accept the proposal if Fisher would reduce the cash difference by $1,000. This is the construction placed on the contract by the trial court, and we agree to its correctness. This leaves for consideration only that portion which the court found to be indefinite because Long had not taken part in learning the differences in the existing liens, a matter ordinarily readily susceptible of correct ascertainment. It would hardly do to say that one might avoid an obligation by failing to find out what liens were on his property, or such as existed against the property proposed to be exchanged for his. For the purposes of this case the demurrer admits that Fisher's balance figures were correct.

We have examined the cases cited by appellee in support of his contention. They do not seem to support his contention, or the basis on which the court found

the contract non-enforceable. The principle relied upon by appellants, and applied to the cases cited, is quoted from Williston on Contracts:

> "Although a promise may be sufficiently definite when it contains an option given to the promisor, yet if an essential element is reserved for the future agreement of both parties, the promise gives rise to no legal obligation until such future agreement. Since either party, by the very terms of the agreement, may refuse to agree to anything the other party will agree, it is impossible for the law to fix any obligation to such a promise."

The right of appellee to repudiate the contract did not depend upon the happening of some future event, which did not happen, as in the cited case of National Bank of Kentucky v. Louisville Trust Co., 6 Cir., 67 F. (2d) 97. It is noted that the rule cited is to the effect that there must be some essential future thing reserved for meeting of the minds of the parties. Here there was a meeting of the minds to the effect that Fisher would pay or assume the mortgage on Long's property, and that Long would pay in cash the mortgage on Fisher's property. This was the essential agreement. The amount of the two liens, and the differences, was a fixed ascertainable fact at any stage of the proceedings, apparently easily determined by Fisher. It took no expert accountant to "adjust this difference in cash." If the defendant chooses to show that there existed an agreement other than set up in the petition, it should be done by pleading.

We are convinced by a reading of the contract in question that the minds of the parties had met, and that it expresses a complete contract leaving open no condition to be subjected to further treaty between the parties with regard to essential particulars to make it enforceable.

In reaching our conclusion we desire to make it clear that we have only considered the one question upon which the trial court based his ruling. Any and all other questions discussed, or suggested in opinion are reserved. Before closing we desire to say that this case was placed on the September 1941 docket on motion of appellant, though filed too late for appearance at that term. It was submitted in January 1942, and ordinarily should and would have been decided much sooner. However, in

the movement of offices the record became misplaced, and was located just recently. It is hoped the unavoidable delay has not resulted in prejudice to the rights of either party.

Judgment reversed, and case remanded for proceedings consistent herewith.