## Meem Haskins Coal Corporation v. Pratt et al.

May 1, 1945

Willis W. Reeves for appellant.

Clark Pratt for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Miles Pratt and J. M. Thomas brought an action against the Meem Haskins Coal Corporation to recover $1,996.50 for labor performed by them in the construction of a building on the premises of the corporation. They alleged in their petition that in November, 1943, they entered into a contract with the defendant to construct a stone magazine building and for the stone work were to be paid $1.50 a cubic foot; that they completed the work, and the building contained 1331 cubic feet of stone. In the fourth paragraph of its answer the defendant alleged that in November, 1943, it desired to construct a substation, using stone masonry in the construction thereof, and that it secured bids from various persons to do the work of cutting and hauling stone and putting it in place in accordance with its plans and specifications; that it proposed to furnish the cement and sand necessary for the construction of the substation, and also proposed to permit the stone to be quarried from its property; that it proposed further to calculate the masonry in all walls less than 12 inches thick as full 12-inch walls and all openings were to be measured as solid masonry; that it received a bid from J. M. Thomas to perform the work at the price of $13.50 a cubic yard, and that his bid was the lowest and best bid received by it, and thereupon it awarded to him the contract to construct the substation in accordance with its plans and specifications; that the masonry and the walls measured in accordance with the specifications of the defendant amounted to 49.41 cubic yards, and that it tendered to J. M. Thomas payment for the work done in accordance with the agreement; namely, 49.41 cubic yards at $13.50 per cubic yard, or a total sum of $667.03. In the fifth paragraph of its answer the defendant alleged that the price of $1.50 per cubic foot of masonry attempted to be charged and collected by the plaintiffs was unreasonable and more than three times the usual and customary price for work of like kind and character at the time. In paragraph 6 it tendered to the plaintiffs the sum of $667.03 in full and final settlement of all claims asserted in the petition. In a reply the plaintiffs

traversed the affirmative allegations of the answer. On the trial of the case the jury returned a verdict for $1,876 in favor of the plaintiffs, and, from the judgment entered thereon, the defendant has appealed.

The proof shows that the work was performed under an express contract. The dispute relates to the price to be received by the appellees for the stone work. They contend they were to be paid $1.50 a cubic foot and the appellant contends that the contract price was $13.50 a cubic yard. Edgar Hammons, general outside foreman of appellant, represented the appellant in the negotiations. J. M. Thomas testified in part as follows: "We sat down on some lumber there on the ground and he (Hammons) said: 'Boys, what can you do it for,' and I said: 'We can do it for $1.50 a foot,' and he said: 'What do you fellows call a yard of stone,' and I said: 'Three foot high, three foot long and one foot thick is the way we build a yard of stone,' and he said: '$1.50 a foot or $13.50 a yard.' Well, he never spoke for a few minutes, and I said: 'You can call it whatever you want to,— $1.50 a foot or $13.50 a yard; that is the way we build it.' He never spoke for a few minutes and he says: 'That is more than we have been giving, but we will go over on the job in the morning and I will show you where you can get the rock, where you will have to haul the rock from.'"

He was corroborated by his partner, Miles Pratt, and his son-in-law, Howard Richardson, who were present. Edgar Hammons testified that he was directed by appellant to obtain bids for the erection of the stone building, and that he obtained a bid of $14 a cubic yard from Bill Hall, a stonemason. He later saw appellees and he understood that they offered to construct the building for $13.50 a cubic yard. He was asked the following questions and made the following answers concerning his conversation with the appellee J. M. Thomas:

"Q. This Jury would like to know what you all said then and there, about the size of the building, the way it was to be built and how it was to be measured and about the price you were to pay them for the work? A. I asked him that evening, and he said $1.50 a foot. I couldn't see through it. So, we dropped everything. The next morning we got on the spot where we were going to build the building. Mr. Thomas kept on marking out on the ground what a foot was. Really, I didn't understand

it. So, after a while I took it he was calling a piece of stone a yard long, a foot thick and a foot wide at $1.50 a foot; that is what I thought he meant. So, I said: 'All right, $1.50 like that would be $13.50 a yard.' I told them I would measure it and Mr. Emmons would measure the cubicle contents in the building and we would see it was got right and they could get who they wanted.

"Q. What did you say to them about $13.50 a yard? A. I told them it would be measured up by the yard and not by the foot because we never done any business by the foot; its always cubic yards over there."

He reported to M. A. Emmons, appellant's general superintendent, that appellees had agreed to do the work for $13.50 a cubic yard. After the work had been substantially completed, measurements were made according to the agreement between Hammons and Thomas and the amount of stone in the building was found to be 1334.1 cubic feet, or 49.41 cubic yards, and appellant offered to pay appellees at the rate of $13.50 a cubic yard, or $667.03, which they refused to accept. It was shown without contradiction that Bill Hall, an experienced stonemason, had submitted a bid of $14 a cubic yard, and that similar work had been performed for appellant for $8 a cubic yard a few months earlier. There was proof that a fair and reasonable price for the work at the time was from $8 to $12 a cubic yard. This evidence was competent and relevant as having a bearing on the understanding of the terms of the contract by the parties.

Appellant's principal complaint is of the instructions. The court gave three instructions. In instruction No. 1 the court told the jury that if they believed from the evidence that the plaintiffs and defendant entered into a contract for the construction of the building referred to in the evidence and the defendant promised and agreed to pay plaintiffs the sum of $1.50 per cubic foot of stone used in the erection thereof, they should find for the plaintiffs not exceeding the sum of $1,996.50, the amount claimed in their petition, and unless they so believed they should find for the defendant. Instruction No. 2 was to the effect that it was admitted in the evidence of the defendant that it was indebted to the plaintiffs in the sum of $667.03, and the jury's finding could be no less than that amount. Instruction No. 3 merely told the jury that nine or more might

make a verdict. The appellant offered an instruction on its theory of the case. This instruction told the jury that they should find for the plaintiffs the sum of $667.03 if they believed from the evidence that the defendant entered into a contract with the plaintiffs in November, 1943, in which it was agreed that the plaintiffs would construct the stone substation mentioned in the evidence at the price of $13.50 a cubic yard for their work and labor in cutting the stone and hauling it to the place where the substation was to be constructed and in constructing the substation. Appellant also offered this instruction: "If you believe from the evidence that the minds of the plaintiffs and defendant did not meet upon the terms of the agreement, that is to say, that they did not both understand the terms of the proposed agreement and that one of them understood the agreement to be one thing and the other another thing, then the Court instructs you that no contract was entered into in this case and the law is for the defendant and you shall so find."

The court refused to give either of these instructions. Appellant was entitled to the instruction offered by it on its theory of the case, and instruction No. 2 given by the court should have been omitted. We are also of the opinion that an instruction embodying the idea contained in the quoted instruction offered by appellant should have been given, but should have directed the jury to find for the plaintiffs the reasonable value of their services instead of directing them to find for the defendant.

It is appellant's contention that the plaintiffs were not entitled to recover on the quantum meruit since they pleaded an express contract and failed to amend their pleading and allege an implied contract. The general rule is that where only an express contract is pleaded, recovery cannot be had on proof of an implied contract. Fowler v. Thomson, 193 Ky. 593, 236 S. W. 1047; Moore v. Stanfill, 235 Ky. 372, 31 S. W. 2d 610; Fruit Growers Express Co. v. Citizens Ice & Fuel Co., 271 Ky. 330, 112 S. W. 2d 54. At best, the rule is technical, and it should not be applied to facts like those in the present case. Appellant and appellees entered into an express contract. The only dispute relates to the price agreed upon; one claims that it was $1.50 a cubic foot, the other that it was $13.50 a cubic yard. The appellees introduced proof that it was agreed they were to receive

$1.50 a cubic foot for their work. They were entitled to an instruction on this theory of the case; that is, that there was an express contract as to the price. They did not wish to submit the case on an implied contract, and they cannot be required to abandon their claim of an express contract and plead an implied contract, nor should they be required to plead in the alternative. However, there is proof strongly tending to show that the minds of the parties never met on the question of price, and an instruction should have been given on that theory of the case in addition to instructions on the theories of the respective parties. Ordinarily, where an express contract is entered into between parties but they differ as to its terms and there is evidence tending to support the claim of each of them, it is for the jury to determine what the terms of the contract were and there can be no recovery on the quantum meruit. However, there should be a recovery on a quantum meruit theory where the plaintiff has performed services under what was intended to be an express agreement as to all the terms, but there is proof that there was not a meeting of the minds of the parties on one or more of the terms. Under such circumstances, the law presumes that the defendant agreed to pay the reasonable value of the services. It is a contract implied in fact and differs from an express contract only in the character of evidence necessary to establish it. Sullivan's Adm'r v. Sullivan, 248 Ky. 744,, 59 S. W. 2d 999; Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S. W. 2d 459. As said in Cawood v. Hall Land & Mining Co., 293 Ky. 23, 168 S. W. 2d 366, 370: "Such an obligation, implied as a term of an express contract, becomes a part of the express contract and differs from an implied obligation imposed by law without regard to the assent of the party bound." Here, both parties, no doubt, acted in good faith believing that each understood the other. As the record stands, it appears that $13.50 a cubic yard was a fair, if not a liberal, price at the time for work similar to that performed by appellees, and that appellant had received a bid of $14 a cubic yard for the same work. It would be strange indeed if appellant, under these circumstances, let the contract at the price of $1.50 a cubic foot, or $40.50 a cubic yard. The facts of the present case distinguish it from Gaffney v. Switow, 211 Ky. 232, 277 S. W. 453.

The judgment is reversed, with directions to grant appellant a new trial and for further proceedings consistent herewith.