**HARTFORD ACCIDENT & INDEMNITY COMPANY, Appellant,**

v.

**MIDDLESBORO–LaFOLLETTE BUS LINE, INC., Appellee.**

Court of Appeals of Kentucky.

May 18, 1962.

Glenn W. Denham, Middlesboro, for appellant.

James W. Smith, Elizabeth Gillis, Middlesboro, for appellee.

MONTGOMERY, Judge.

The Middlesboro-LaFollette Bus Line, Inc., recovered judgment against the Hartford Accident & Indemnity Company in the sum of $4,203.20 for the destruction by fire of a bus. The bus line sued to recover $4,500 as the value of the bus insured under an alleged contract of insurance pursuant to an oral agreement by Hayden Smith, its president and general manager, and Jack T. Jenkins, Hartford's local agent. Hartford contends that there was no meeting of the minds as to the amount of insurance or the preimum to be paid; hence, no contract. The bus line urges that Hartford's agent, Jenkins, bound his company to insure the bus in the amount of $4,500 for a premium to be determined by Hartford, which the bus line agreed to pay upon such determination. The verdict was for the net amount after deduction of the premium.

Early in June 1959, Smith approached Jenkins, local agent for several insurance

companies, to secure a fire and theft policy of insurance on a fleet of buses, including the one in question, and other equipment. No policy had been delivered and no premium had been paid at the time of the loss on August 14, 1959.

Smith testified for the bus line that the bus was to have been insured for $4,500; that he inquired of Jenkins what the premium would be; that Jenkins advised that the amount of the premium would have to be ascertained; and that he agreed with Jenkins to pay whatever amount the premium was determined to be. About two weeks after the initial discussion about the coverage, Smith said Jenkins advised that the Travelers Insurance Company to which he had sent the application had quit writing that type of business and that he had sent it to Hartford. In response to Smith's inquiry, "What happens if I have a loss?" Smith testified that Jenkins replied, "It doesn't make any difference, you are protected anyway." Jenkins' authority as local agent for Travelers and Hartford was identical and included the authority to bind a risk upon application being made.

Smith reported the loss to Jenkins the morning after the fire and was advised that the policy had not been received. Smith also said that he called Jenkins' attention to the listing of the value of the bus at $3,000 on the schedule and told him it should have been $4,500. He testified that Jenkins said, "I guess that is a mistake on my part and you will get insurance for $4,500.00."

A few days later, Jenkins, in the presence of Smith, called Hartford's Cincinnati office about the loss. Smith testified that he heard Jenkins say, "No, I didn't give him anything in writing, I just told him he was under binder." Jenkins later told Smith he would write Hartford about the loss. A reply denying liability was received.

Jenkins admitted telling Smith that the risk was under binder when he sent the application to Travelers. Upon receipt of Travelers' rejection of the risk, Jenkins, then about to depart on a three-week vacation, left a note to his secretary to "write Hartford on fire and theft." The secretary wrote Hartford, asking that a fire and theft policy be written to cover the bus (which was later burned) and the other property, effective immediately. A schedule of the equipment was attached.

Jenkins denied telling Smith that the application had been rejected, that appellee was protected, or that the coverage was to be $4,500. Jenkins admitted making the call to the Cincinnati office but denied that he had told Smith the risk was under binder. Jenkins further said that he was unfamiliar with premium rates on this type of business but felt that Smith "would pay for the insurance when it was secured."

It is conceded that there was an agreement on four of the essential elements of an insurance contract. The buses and equipment of the bus line were to be insured by Hartford against fire and theft for one year. The subject matter, the risk, its duration, and the identity of the parties were not in controversy. See Shawnee Fire Insurance Company v. Roll, 145 Ky. 113, 140 S.W. 49; Kitchen v. Yorkshire Insurance Company, 226 Ky. 376, 10 S.W. 2d 1074.

Hartford contends that there was no agreement on the amount of insurance or the rate of premium, the other two essential elements of an insurance contract. The witnesses were in agreement that the premium rate was to be ascertained and that whatever it was determined to be would be paid by appellee. This is typical of the transaction where temporary protection against a risk is sought to be covered. In such case, the agreement as to rate of premium is that the insured agrees to pay such premium as is usual and customary or a reasonable one to be fixed or determined by the insurer. In the absence of a specified premium, it was enough to "provide a way in which it was to be

fixed." Pennsylvania Fire Insurance Company v. Cullin, 202 Ky. 107, 258 S.W. 965. The agreement of the parties here on the rate of the premium was sufficient. Standard Fire Insurance Company v. Robey, 257 Ky. 204, 77 S.W.2d 785; Preferred Risk Fire Insurance Company v. Neet, 262 Ky. 257, 90 S.W.2d 39.

Appellant relies on Campbell v. Aetna Insurance Company, Ky., 269 S.W.2d 292, wherein recovery was sought, but denied, for $120,000 against the twenty insurance companies represented by a single agency. In that case the rule as to rate of premium, as stated above, was approved but was held inapplicable because there was a question as to the kind of insurance contemplated by the parties. There is no such question here. Further, in the Campbell case there was a failure to show the amount each company was to insure. Here, there is a single company, Hartford, which admittedly is the would-be contracting company. But it contends that there was no meeting of the minds on the amount of insurance.

The trial court submitted this question to the jury under instructions which permitted the jury to determine whether each element of the insurance contract, except the premium rate, had been established and, if so, to find that the amount of insurance was to be either $4,500 or $3,000. The jury was further instructed that in order for the parties to have made a contract "their minds must have met and both of them or their agents must have agreed." Inasmuch as there was a conflict in the testimony on the amount of insurance, the issue was properly submitted to the jury under the instructions mentioned. Ordinarily where parties differ as to the terms of an express contract and there is evidence, as here, to support the claim of each of them, it is for the jury to determine what the contract term in question is. Meem-Haskins Coal Corporation v. Pratt, 299 Ky. 767, 187 S.W. 2d 435.

The evidence offered by appellee was sufficient to establish the contract; the jury believed Smith instead of Jenkins and his witnesses; and the verdict was supported by substantive evidence. The motion for judgment notwithstanding the verdict was properly overruled.

Judgment affirmed.