**Andrew J. KOVACS, M.D., Appellant,**

v.

**George FREEMAN and Oreida Freeman, Appellees.**

**George FREEMAN and Oreida Freeman, Cross–Appellants,**

v.

**Dennis Roger LANE, M.D. and Andrew J. Kovacs, M.D., Cross–Appellees.**

Nos. 96–SC–420–DG, 96–SC–1063–DG.

Supreme Court of Kentucky.

Dec. 18, 1997.

Margaret M. Pisacano, Stites & Harbison, Lexington, for Appellant/Cross–Appellee Kovacs.

Gary L. Gardner, C. David Ewing, Anne Milton McMillin, Gardner, Ewing & Souza, Louisville, for Appellees.

John G. Prather, Jr., Somerset, for Cross–Appellee Lane.

GRAVES, Justice.

The issue in this case concerns the extent of authority granted by a hospital consent form to a surgeon who was not listed in the form. The Pulaski Circuit Court entered a judgment based on a jury verdict in favor of Dennis Lane, M.D. and Andrew Kovacs, M.D., finding that Dr. Kovacs had the oral consent of Appellee, George Freeman, to perform surgery. On appeal, the Court of Appeals reversed and remanded, holding that the parol evidence rule barred admission of evidence of Freeman's alleged oral consent to Dr. Kovacs' participation in the operation, inasmuch as Dr. Kovacs was not specifically named in the hospital's written consent form. This Court granted discretionary review. For reasons stated herein, we reverse the Court of Appeals and reinstate the trial court judgment.

George Freeman consulted Dr. Dennis Lane concerning a work-related back injury. Dr. Lane performed a myelogram and recommended a lumbar laminectomy to correct a herniated disc. Pursuant to their usual practice, the surgery was performed by Dr. Kovacs, the more experienced orthopedic surgeon, with Dr. Lane assisting. Although the surgical procedure was successful, Freeman subsequently developed an infection in his vertebral column.

Prior to surgery, Freeman signed a hospital consent form which stated in part, "I hereby authorize Dr. Lane and whomever he may designate as his assistants, to perform upon myself the following operation: Lumbar Laminectomy...." The fill-in-the-blank form was prepared by the hospital nursing staff in accordance with Dr. Lane's order in Freeman's patient chart for an "op permit for lumbar laminectomy."

Dr. Lane testified that when he discussed the proposed surgery with Freeman, he explained that the surgery would be performed by Dr. Kovacs with Dr. Lane assisting, and that Freeman orally consented to the procedure as described. Freeman denies that such a conversation took place, and insists he never agreed to permit Dr. Kovacs to perform the surgery.

Freeman filed suit against Dr. Kovacs, Dr. Lane and others, seeking recovery under theories of negligence, fraud and battery. The trial court entered a summary judgment in favor of the doctors on the negligence and fraud claims and those issues are no longer in the case. The battery claims against Drs. Kovacs and Lane, based on lack of consent, were tried to a jury which found that Freeman gave his consent to have surgery performed upon him by Dr. Kovacs.

On appeal, the Court of Appeals found, *inter alia*, (1) a patient may recover damages for battery when an operation is performed upon the patient without his consent, whether or not the operation was negligently performed; (2) consent may be express, implied or presumed; (3) the term "ghost surgery," which constitutes a battery, refers to surgery performed by a substituted doctor to whom consent has not been given; (4) any ambiguity in a hospital consent form should be construed against the medical provider; (5) the relationship between physician and patient is basically contractual and a written consent is a contract; (6) the parol evidence rule is applicable to the instant case, and evidence of the alleged oral agreement between Dr. Lane and Freeman, wherein Freeman consented to Dr. Kovacs' performing the surgery, was inadmissible to vary or contradict the terms of the written consent; (7) any oral consent was superseded by the written consent form; (8) Dr. Lane could not be held liable for battery since he clearly had consent, and any liability he may have had under theories of negligence or fraud had been dismissed; and (9) Dr. Kovacs did not have consent of any kind to operate on Freeman. The alleged oral consent obtained by Dr. Lane was not valid as to Dr. Kovacs under both the parol evidence rule and pursuant to accepted standards in the medical community.

The Court of Appeals further found that Dr. Kovacs should have secured his own consent. Thus, a directed verdict should have been entered against Dr. Kovacs since, under the evidence in the record, as a matter of law he was liable for assault and battery as a result of the unauthorized surgery by him.

In his argument to this Court, Dr. Kovacs contends the consent form in the instant case has none of the earmarks of an enforceable contract (no statement of consideration, no time for performance, etc.) Moreover, Dr. Kovacs contends the consent form contains no recital that it is the entire agreement between the parties, or that no other doctor would participate in the surgery. To impose liability as a matter of law upon Dr. Kovacs, who is a stranger to the contract between Dr. Lane and Freeman is legally indefensible, Dr. Kovacs argues, particularly when the contract is one for services. Dr. Kovacs concludes that the fact that Freeman and Dr. Lane had a written consent form does not preclude a separate oral consent between Freeman and himself.

Dr. Kovacs also urges review of the application of the parol evidence rule to medical consent documents. He insists that a consent document is not an integrated agreement and that the patient's consent in most cases is also based on preoperative discussions between the doctor and patient. For example, the type of anesthesia, the nature of the risks involved and disclosed, and the manner in which the procedure is to be performed, are not disclosed in the written consent form, but are certainly part of the agreement between the doctor and patient and relate to the patient's consent.

■■■ Not every agreement or understanding rises to the level of a legally enforceable contract. The consent form merely documents that the patient agrees to undergo medical treatment. Under Kentucky law, an enforceable contract must contain definite and certain terms setting forth promises of performance to be rendered by each party. *Fisher v. Long,* 294 Ky. 751, 172 S.W.2d 545 (1943). Mutuality of obligations is an essential element of a contract, and if one party is not bound, neither is bound. *Morgan v. Morgan,* 309 Ky. 581, 218 S.W.2d 410 (1949). Dr. Kovacs had no obligations under the written surgical consent form. The consent form lacks mutuality of obligations and cannot be enforced as a contract.

■■■ Additionally, under Kentucky law the terms of a contract must be sufficiently complete and definite to enable the court to determine the measure of damages in the event of breach. *Mitts & Pettit, Inc. v. Burger Brewing Co.,* Ky., 317 S.W.2d 865 (1958). The consent form in this case does not even contain a statement that Freeman agreed to pay for surgical services rendered. No consideration is recited.

Fay A. Rozovsky's legal treatise on consent in medical settings provides a starting point for discussion. *Consent to Treatment* (2d ed.1990). Rozovsky explains the legal premise that consent depends not only on the written consent document, but also on the actual discussion between physician and patient:

> Many people think of consent to treatment as a form. Consent is equated in their minds with the document through which patients agree to procedures their physician believes are advisable or necessary. Such a definition is incorrect and misleading, and in some instances can be dangerous.

*Id.* at § 1.0.

A later section of the treatise discusses the issue presented in this appeal, the validity of verbal consent to treatment. Rozovsky instructs:

> Unless otherwise required by law in a particular state, authorization of treatment by a patient may be in verbal form. Some state statutes even formally recognize this option. [citing Idaho Code § 39–4305 (1975)] Consent obtained verbally is just as valid as consent gained in writing, provided that all the criteria for a valid consent have been met.

> Consent is a process, not a document. Authorization for treatment is the culmination of a discussion between a patient and a health care provider, the disclosure of risk and benefit information, the disclosure of reasonable alternative forms of care, and the posing of questions and answers by both the patient and the provider. Once the patient has agreed to a specific course of treatment, the process is over.... The documentation, the so-called consent form, is not the consent, for that lies instead in the conclusion of the discussion between the patient and the physician. Bearing in

mind the need for documentation or written consent forms in some states, therefore, verbal *authorizations for treatment* are quite valid.

*Id.* at § 1.10.2.

■ There is no statutory or regulatory requirement in Kentucky that a consent to surgery be in written form. The Kentucky statute dealing with legal requirements for valid informed consent to medical treatment, KRS 304.40–320, makes no reference to a written consent document. Instead, evidence of a valid consent, per Kentucky law, lies in the verbal discussion between physician and patient. KRS 304.40–320 provides:

Informed consent—When deemed given.— In any action brought for treating, examining or operating on a claimant wherein the claimant's informed consent is an element, the claimant's informed consent shall be deemed to have been given where:

(1) *The action of the health care provider in obtaining the consent of the patient* or another person authorized to give consent for the patient was in accordance with the accepted standard of medical or dental practice among members of the profession with similar training and experience; and

(2) A reasonable individual, *from the information provided by the health care provider under the circumstances,* would have a general understanding of the procedure and medically or dentally acceptable alternative procedures or treatments and substantial risks and hazards inherent in the proposed treatment or procedures which are recognized among other health care providers who perform similar treatments or procedures;

(emphasis added).

■ Kentucky courts have repeatedly recognized that valid consent to medical treatment is to be gleaned from evidence of the circumstances and discussions surrounding the consent process. In *Haywood v. Allen,* Ky., 406 S.W.2d 721 (1966), Kentucky's highest court recognized that consent to an operation need not be express, but may be implied from the surrounding facts and circumstances. *Id.* at 722. In *Haywood,* an alleged lack of consent case,

the court affirmed a summary judgement granted in favor of the defendant physician based on deposition testimony of "a tacit understanding" of the scope of the anticipated surgery. *Id.* at 722.

*Van Meter v. Crews,* 149 Ky. 335, 148 S.W. 40 (1912), involved an action against a surgeon for the performance of an operation without the plaintiff's consent. The court held that if the surgeon had "reasonable grounds" for believing the plaintiff had actually consented, the surgeon had a right to proceed with the operation. *Id.* at 42. In *Van Meter,* a consultation between the physician, the plaintiff, and the plaintiff's family, was deemed sufficient consent. *Id.*

The most recent Kentucky decision concerning medical consent was rendered by this Court in *Lewis v. Kenady,* Ky., 894 S.W.2d 619 (1994). While the legal issue in that case was the conclusiveness of pretrial requests for admissions, the decision confirms, yet again, the admissibility of preoperative discussions between physician and patient as evidence of the scope of consent granted. *Id.* at 622. In *Lewis,* the critical factual issue centered around the scope of authorization for surgery undertaken to treat a malignant breast tumor. The consent form signed by the plaintiff authorized a mastectomy. The plaintiff, however, was permitted to introduce testimony that regardless of the written authorization, she had, in fact, orally conditioned the performance of a full mastectomy upon a positive biopsy at the time of surgery. Both the Court of Appeals and this Court emphasized that the plaintiff was entitled to a full opportunity to present her testimony regarding this oral agreement. *Id.* at 620, 622.

■ The consent form in this case has none of the earmarks of an enforceable contract: no promises or specified obligations of performance by either party, no statement of consideration for the performance of the agreement, no time specified for anyone to act in any way, no recital of completeness, and no measure of damages in the event of breach. A review of the consent form reveals that it is totally lacking in specificity. The very basis of an informed consent is the discussion between physician and patient re-

garding the nature and purpose of the proposed operation, the risks and possible complications thereof, and possible alternative methods of treatment. That these crucial elements were discussed is set forth in Freeman's consent form in a conclusory fashion, with none of the details provided. Therefore, parol evidence must be introduced to establish the most critical underpinnings of this document. The "terms" of the agreement between Dr. Lane and Freeman simply do not appear on the face of the consent form.

■■■ Moreover, the consent form at issue creates no legally enforceable obligation on the part of Dr. Kovacs. The consent form addresses only an agreement between Dr. Lane and Freeman. Imposition of liability on Dr. Kovacs premised on contract law violates the basic principle that the obligations of a contract are limited to the parties thereto and cannot be imposed on a stranger to the contract, particularly when the contract is one for services. *Johnson v. Coleman*, Ky., 288 S.W.2d 348, 349 (1956). The consent extended to Dr. Kovacs was separate and independent from the written consent extended to Dr. Lane.

■■■ A great majority of other jurisdictions that have considered this specific legal question have rejected the assertion that medical consent documents create legally enforceable contractual obligations. Directly on point is a recent decision from a federal district court sitting in Kansas. In *Perry v. Saint Francis Hosp. and Med. Ctr.*, 886 F.Supp. 1551 (D.Kan.1995), the family of a patient who died of a heart attack sued the hospital for allegedly exceeding the scope of the family's consent regarding organ and tissue donation. Several family members executed a consent form indicating an agreement to donate "eyes" and "bone." *Id.* at 1555. However, the family contended they orally "contracted" only for the donation of the decedent's corneas and bone marrow.

On appeal, the court, recognizing that the plaintiff's allegations were "confusing and less than satisfying," held:

> The plaintiffs' breach of contract claim is an effort to force a square peg into a round

hole. In their designated deposition testimony, the Perrys' [plaintiffs] do not describe the consent form as functioning anything like a contract. The consent form simply memorializes their consent to donate. It does not purport to set forth any particular rights and duties of the parties like a written contract would be expected to do. The conversations regarding the tissue donations, as described by the plaintiffs and nurse McDonald, indicate little more than the plaintiffs' efforts to inform themselves in the exercise of their consent to donate. The conversation hardly resemble contract negotiations over such subjects as performances, consideration, and remedies. . . . The court rejects plaintiffs' attempts to construct an enforceable contract from these facts.

*Id.* at 1562.

The *Perry* court's description of a contract claim in the medical consent arena properly characterizes the mismatch between legal principle and medical reality in this setting. A majority of courts join this view. In *Wilson v. Board of Regents*, 262 Ga. 413, 419 S.E.2d 916 (1992), the Georgia Supreme Court considered a breach of contract claim premised on a hospital consent form, asserted in an attempt to avoid the bar of sovereign immunity. Affirming the trial court's dismissal of the contract claim, the appellate court held that "[a] consent form and other hospital records lacking the essential terms of a contract are not a written contract to which the waiver of sovereign immunity applies." *Id.* at 918. *See also Board of Regents v. Tyson*, 261 Ga. 368, 404 S.E.2d 557 (1991) (rejecting a claim that a "Consent to Hospital Care" document provided a patient with contract rights, noting no evidence of consideration to support the alleged contract).

Likewise, the Supreme Court of Arkansas, in *Taggart v. Northeast Arkansas Rehab. Hosp.*, 316 Ark. 39, 870 S.W.2d 717 (1994), considered a claim that a "Patient Consent Form" executed at the time of the patient's admission constituted a contract imposing liability on the patient's employer for payment of the medical services rendered. The appellate court, noting that an enforceable con-

tract requires definite and certain terms, held that the consent form failed to evince a clear agreement of this nature. *Id.* at 719. As in the other decisions herein cited, the contract claim was rejected.

A Virginia circuit court reached the same conclusion. In *Gray v. Burke,* 32 Va.Cir. 407 (1994), the plaintiff asserted that a "Sterilization Consent Form" imposed contractual obligations upon the operating physician. Rejecting the contract claim, the court held that "[a] reading of the consent form shows that it is simply that, an acknowledgment by the patient of the nature of the operation and its intended consequences and confirmation by the doctor that he explained the nature and risks of the operation and its intended effect upon the patient."

■ The "consent contract" in this case was based on the preoperative discussion and agreements between Dr. Lane and Freeman. The most obvious exception to the parol evidence rule present in these circumstances is that "where a contract rests upon an oral agreement, parol evidence is admissible as to the terms of the contract, notwithstanding the existence of memoranda relating to the contract." 29A Am.Jur.2d, *Evidence* § 1107 (1994).

■ A second applicable exception to the parol evidence rule deals with the fact that the consent document is by no means an "integrated agreement" embodying the entire agreement between Dr. Lane and Freeman. It is a basic tenet of contract law that when a written agreement is not an integrated or complete contract, parol evidence which supplements the writing is admissible.

■ Another exception to the parol evidence rule provides that the rule of exclusion applies only to parties to the contract. *Potts v. Draper,* Ky., 864 S.W.2d 896, 899 (1993). It cannot be applied to preclude Dr. Kovacs, unidentified in the consent document, from introducing evidence that Freeman orally consented to his participation. Parol evidence is admissible in order to completely identify all intended parties to an agreement. Accordingly, we hold that parol evidence of the oral agreement between Dr. Kovacs and Freeman was admissible to prove consent to perform the surgery.

As a final matter, we note that Dr. Lane was not named as a party in the initial motion for discretionary review filed by Dr. Kovacs, nor did Freeman seek discretionary review against Dr. Lane. Thus, the Court of Appeals opinion became final as to Dr. Lane on the 21st day after its rendition. CR 76.20. Since Dr. Lane was not an indispensable party to the issue raised by Dr. Kovacs, it was incumbent upon Freeman to file a separate motion for discretionary review in order to preserve any claim against Dr. Lane. *See Green River District Health Dept. v. Wigginton,* Ky., 764 S.W.2d 475 (1989). Freeman's cross-motion is not sufficient pursuant to CR 76.20.

For the foregoing reasons, the decision of the Court of Appeals is reversed and the decision of the Pulaski Circuit Court is reinstated.

All concur.