RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0388p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROBERT LANGLEY; MOUNTAINEER DEVELOPMENT
COMPANY, LTD; COLONY CROSSING, LLC;
LANGLEY-COLONIAL, LLC,

            *Plaintiffs-Appellees,*

      *v.*

PRUDENTIAL MORTGAGE CAPITAL COMPANY, LLC,

            *Defendant-Appellant,*

NATIONAL CITY BANK,

            *Defendant.*

No. 08-5032

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 07-00404—Joseph M. Hood, District Judge.

Argued: June 5, 2008

Decided and Filed: October 27, 2008

Before: MERRITT, MOORE, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:** William W. Allen, GESS, MATTINGLY & ATCHISON, Lexington, Kentucky, for Appellant. P. Douglas Barr, STOLL KEENON OGDEN, Lexington, Kentucky, for Appellees. **ON BRIEF:** Steven M. Collins, Daniel F. Diffley, Grant T. Stein, ALSTON & BIRD, Atlanta, Georgia, Barbara B. Edelman, David J. Treacy, DINSMORE & SHOHL, Lexington, Kentucky, for Appellant. P. Douglas Barr, Robert M. Watt III, Shannon A. Singleton, STOLL KEENON OGDEN, Lexington, Kentucky, for Appellees.

     The court delivered a PER CURIAM opinion. MOORE, J. (pp. 6-8), delivered a separate concurring opinion. MERRITT, J. (pp. 9-10), delivered a separate dissenting opinion.

---------------

**OPINION**

---------------

**I.**

PER CURIAM.[1]  This case involves two sizeable real estate loans — one for $43 million, the other for $14 million — by Prudential, the lender, to Robert Langley, the borrower.  The dispositive issue on appeal is whether two contracts, both of which included a forum selection clause choosing New York as the forum for litigation, should be enforced.  The federal district court below determined that the contracts were invalid and thus declined to enforce the forum selection clauses.  Because a valid and enforceable contract exists, we vacate and remand for the district court to entertain a motion to enforce the forum selection clause under FED. R. CIV. P. 12(b)(6) or 28 U.S.C. § 1404(a).

**II.**

This appeal stems from two loan agreements between Langley and Prudential Mortgage Capital Company, LLC ("Prudential").  First, on June 6, 2007, Langley signed a loan for $43,300,000 to finance a commercial real estate project in Gulf Shores, Alabama, known as Craft Farms (the "Craft Farm loan").  And second, Langley signed a loan for $13,800,000 on June 25, 2007, to finance a commercial real estate project in Mississippi known as Colony Crossing (the "Colony Crossing loan").  The parties also agreed to "Rate Lock Agreements" for both loans, which were signed on the same days as the two loan agreements.  The Rate Lock Agreements, which are at the heart of this controversy, both included the following choice of law and forum selection clause:

> Pursuant to Section 5-1401 of the General Obligations of the State of New York, this Agreement shall be governed by the substantive law of the State of New York (without regard to the principles of conflicts of laws).  Pursuant to Section 5-1402 of the General Obligations Law of the State of New York, the parties hereto elect that *any litigation arising out of this Agreement* shall be brought *only in a state or federal court sitting in New York County in the State of New York*.

(Emphasis added).

The Rate Lock Agreements resulted from negotiations to determine the exact conditions and rates necessary to finalize the loans.  Because Prudential intended to securitize the proposed loans using commercial mortgage-backed securities, it required rate lock deposits, which Langley paid, before agreeing to the Rate Lock Agreements.  The Rate Lock Agreements also included a provision giving Prudential the discretion to demand increases in the amount of the rate lock deposits.  Under the terms of the loan agreements, Langley agreed to pay "unwind costs" if the loans failed to close for any reason.

Beginning in the summer of 2007, the rate on the 10-Year Treasury Notes began to drop as a result of the subprime mortgage crisis.  Prudential characterized this event as a material adverse change and demanded that Langley increase the rate lock deposits in order to maintain the terms of the  Rate Lock Agreements.  Meanwhile, a dispute had developed over the interpretation of the Rate Lock Agreements; specifically, the parties disagreed about

---

[1]This opinion is joined by Judges Moore and Rogers. The opinion is styled *per curiam* because it was not prepared solely by one member of the panel.

whether they had agreed to fix the interest rates for the loans absolutely or whether the agreements simply fixed the interest rate spread (which was subject to change). Langley ultimately delivered two letters of credit — drawable on an account at National City Bank — to Prudential in response to Prudential's demand that he increase the rate lock deposits: one on August 20, 2007, and the other on August 21, 2007.[2] As market conditions continued to fluctuate, the parties entered into what proved to be unsuccessful discussions about modifying the terms of the loan. Prudential then informed Langley that the failure to finalize the two loans constituted unwind events under the agreements. Accordingly, Prudential informed Langley that it would seek to have the letters of credit honored as part of the unwind costs. Langley then filed an action on December 3, 2007, seeking to enjoin National City Bank, a co-defendant, from honoring the letters of credit that Langley had provided to Prudential. In response, Prudential argued that the forum selection clauses should be enforced and that the injunction should not issue.

The district court rejected the forum selection clauses and then issued the preliminary injunction on December 6, 2007. On the forum selection clause issue, the district court's decision is as follows:

As a preliminary matter, the Court must address Prudential's assertion [that] pursuant to the Rate Lock Agreement, any disputes arising from the Rate Lock Agreements "shall be governed by the substantive law of the State of New York" and that any litigation arising out of the Rate Lock Agreements "shall be brought only in a state or federal court sitting in New York County in the State of New York." Plaintiffs contend that as there was no meeting of the minds regarding the Rate Lock Agreements, the choice of law and forum selection clauses . . . do not control this litigation, a contention with which this Court agrees. Accordingly, this Court is a proper forum for this litigation, which shall be governed by the substantive law of the Commonwealth of Kentucky.

*Langley v. Prudential Mortgage Capital Co.*, No. 07-cv-404-JMH, 2007 U.S. Dist. LEXIS 92224, at *5 (E.D. Ky. Dec. 12, 2007). This appeal followed.

## III.

Prudential argues in this appeal that the district court committed reversible error by not enforcing the terms of the forum selection clause. According to Prudential, the agreements containing the clauses constitute valid, enforceable contracts, notwithstanding the district court's conclusion to the contrary. We review questions of contract interpretation de novo. *Chi. Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 990 (6th Cir. 2007) (citing *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996)).

The district court focused on the parties' disagreement about whether the agreements locked the interest rates absolutely or merely the spread in finding that there was no meeting of the minds. Langley argues that the agreements froze the interest rates at a fixed value for each loan, while Prudential contends that the parties only agreed to fix the interest rate spread. According to Prudential, therefore, the occurrence of certain events — including the crisis in the lending markets — could trigger an increase in the rates paid by Langley. The district court treated the disagreement on this particular issue as fatal to the entire contract.

---

[2]Langley contends that he only posted the additional letters because he feared that, otherwise, Prudential would simply declare an unwind event and keep the original rate lock deposits. Langley also believed that posting additional collateral would help to facilitate negotiations regarding the disagreement about the interest rates.

In reaching its determination that no contract existed, the district court applied Kentucky law (the law of the forum) as opposed to New York law (the law chosen by the litigants). Importantly, "if no contract exists, the language of the forum-selection clause cannot logically deprive [the plaintiff] of its significant right of access to the courts of the United States." *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509 (2d Cir. 1998); *see also Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) (applying the choice-of-law rules of the forum state to determine whether to enforce a contract containing a choice of law clause). As a result, the district court was correct that Kentucky law governs the initial question of whether the agreements containing the forum selection clauses were valid. *Cf. Inghram v. Universal Indus. Gases, Inc.*, No. 1:05-cv-19, 2006 U.S. Dist. LEXIS 7730, at *2-3 (E.D. Tenn. Feb. 8, 2006).

Under Kentucky law, "not every agreement . . . rises to the level of a legally enforceable contract." *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997). "An enforceable contract must contain definite and certain terms setting forth the promises of performance to be rendered by each party." *Id.* (citing *Fisher v. Long*, 172 S.W.2d 545 (Ky. 1943)). There must also be mutuality of obligations. *Kovacks*, 957 S.W.2d at 254 (citing *Morgan v. Morgan*, 218 S.W.2d 410 (Ky. 1949)). However, "where parties differ as to the terms of an express contract and there is evidence . . . to support the claim of each of them, it is for the jury to determine what the contract term in question is." *Hartford Accident & Indem. Co. v. Middlesboro-La Follette Bus Line, Inc.*, 357 S.W.2d 671, 673 (Ky. 1962).

Prudential is correct that contracts between the parties were formed. The contracts were fully executed by the parties who then proceeded to act in reliance on them. There is simply a difference of opinion as to the meaning of the contracts. Both parties assumed obligations so as to ensure the financing for the real estate projects. The parties chose specific dates for performance, outlined the events necessary for performance, and indicated a desire to be bound by the contract. Moreover, Langley does not argue that the contracts were the product of fraud. Rather, the disagreement centers on the meaning of particular terms in otherwise enforceable agreements. Because the record indicates that this disagreement is the result of a good faith dispute and that both interpretations are supported by the evidence, the meaning of the contested term must be determined. *Id.* Thus, for purposes of deciding the issue concerning the enforcement of the forum selection clauses, both Rate Lock Agreements constitute valid and enforceable contracts.

## IV.

Because the district court's conclusion regarding the validity of the contracts was incorrect, we now turn to the issue of whether the forum selection clauses contained therein should be enforced. While we would find the forum selection clause enforceable, Defendant has not yet moved for enforcement of the clause through either a motion to transfer venue under 28 U.S.C. § 1404(a) or a motion to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim. Whether such a motion seeks transfer as opposed to dismissal may affect whether factors beyond the intent of the contracting parties may be taken into account by the district court. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988) (stating that a forum selection clause is considered within the § 1404(a) balancing analysis); *id.* at 29 n.8 (implying that defendant may not enforce a forum selection clause through dismissal for improper venue); *Security Watch, Inc. v. Sentinel Sys.*, 176 F.3d 369, 371, 375-76 (dismissing under Rule 12(b) due to a forum selection clause).

Because the district court has not had the opportunity to consider either a motion to dismiss or a motion to transfer, we **VACATE** the injunction and **REMAND** so that the court

may rule, consistently with this opinion, on a properly brought motion based on the forum selection clause.

---

**CONCURRENCE**

---

KAREN NELSON MOORE, Circuit Judge, concurring. I concur with the per curiam opinion but write separately to set forth my view of the Supreme Court and Sixth Circuit precedent concerning the two procedural mechanisms that may be used to enforce a valid forum-selection clause: (1) a motion to dismiss under FED. R. CIV. P. 12(b)(6), and (2) a motion to transfer pursuant to 28 U.S.C. § 1404(a). When a party seeks to enforce a forum-selection clause through a properly brought motion to dismiss, the district court may enforce the forum-selection clause through dismissal. *See Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 371, 374-76 (6th Cir. 1999) (affirming the district court's dismissal pursuant to an unspecified subsection of Federal Rule of Civil Procedure 12(b) to enforce a forum-selection clause). However, when a party seeks to enforce a forum-selection clause by moving to transfer venue, § 1404(a)'s balancing test controls and the forum-selection clause is considered as one factor in the overall balance. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28-32 (1988); *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 538-39 (6th Cir. 2002).

In *Ricoh*, the Supreme Court held that a federal court should apply § 1404(a) to evaluate a party's motion to enforce a forum-selection clause by requesting transfer of the action to another federal district permitted under the clause. 487 U.S. at 28-32. The plaintiffs in *Ricoh* brought suit in the Northern District of Alabama on a contract containing a forum-selection clause specifying that any dispute arising out of the contract must be brought in a court in Manhattan. The defendants then moved either to transfer the case to the U.S. District Court for the Southern District of New York under § 1404(a) or to dismiss for improper venue under 28 U.S.C. § 1406. The district court denied the motion, and the only issue raised on appeal was whether § 1404(a) governed the parties' venue dispute. *Id.* at 24-25, 28.[1] In holding that § 1404(a) governs a party's request to enforce a forum-selection clause by transfer to another federal district, the Supreme Court instructed district courts to weigh forum-selection clauses within the "flexible and individualized analysis Congress prescribed in § 1404(a)." *Id.* at 29. The Court stated that the presence of a forum-selection clause "will be a significant factor that figures centrally in the district court's calculus." *Id.* However, a forum-selection clause is not dispositive and must be weighed against other factors in the § 1404(a) balancing test:

> Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of "the interest of justice."

*Id.* at 30. The Court also noted that the district court should consider the "convenience of a [proposed transferee] forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power." *Id.* at 29.

---

[1] The Court noted with apparent approval that "[t]he parties do not dispute that the District Court properly denied the motion to dismiss the case for improper venue under 28 U.S.C. § 1406(a) because respondent apparently does business in the Northern District of Alabama." *Id.* at 28 n.8 (citing 28 U.S.C. § 1391(c)).

In *Kerobo*, we applied *Ricoh* to a case "that in all material respects" was "indistinguishable from *Ricoh*." 285 F.3d at 533. The plaintiffs in *Kerobo* brought suit in Michigan state court alleging various claims arising out of a franchise agreement, which contained a forum-selection clause providing that any suit must be brought in Orange County, California. *Id.* at 532-33. The defendants removed the case to federal district court in Michigan, and then moved either to (1) dismiss the suit for improper venue pursuant to FED. R. CIV. P. 12(b)(3) because the forum-selection clause established venue in California, or (2) transfer the case to the U.S. District Court for the Southern District of California under § 1404(a). *Id.* at 533. Relying on *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972), the district court found that the forum-selection clause was reasonable and granted the defendants' motion to dismiss pursuant to Rule 12(b)(3). *Kerobo*, 285 F.3d at 533. On appeal, we reversed the dismissal and remanded with instructions for the district court to consider whether transfer was appropriate under § 1404(a).

We first held that Rule 12(b)(3) is not a proper procedural mechanism for enforcing a forum-selection clause, at least in cases removed from state to federal court. *See id.* at 534-36. We observed that under the federal removal statute, 28 U.S.C. § 1441(a), venue for an action removed from the state court was proper in the U.S. District Court for the Eastern District of Michigan. *Id.* at 535. Consequently, the forum-selection clause could not render statutory venue "improper." *Id.* Further, we observed that the Supreme Court in *Ricoh* "footnoted with apparent approval the parties' agreement that the district court had properly denied the motion to dismiss for improper venue because the case had been filed in the venue prescribed by 28 U.S.C. § 1391, the statute governing venue for cases filed directly in federal court." *Id.* at 536 (citing *Ricoh*, 487 U.S. at 28 n.8). We concluded that this provided a "clear signal that if venue is proper under the statute, a motion to transfer for improper venue will not lie." *Id.* Having rejected dismissal under Rule 12(b)(3) as improper, we were left, like the Supreme Court in *Ricoh*, with the motion to transfer under § 1404(a). *Id.* at 536-39. Concluding that the case was indistinguishable from *Ricoh*, we held that "*Ricoh* entirely governs the case before us here and compels the conclusion that § 1404(a) governs the parties' venue dispute." *Id.* at 539.

*Ricoh* and *Kerobo* thus indicate that, when a party seeks to enforce a forum-selection clause by moving to transfer venue, § 1404(a)'s balancing test controls the district court's decision whether to give effect to the forum-selection clause (assuming, of course, that venue is proper in the place of filing and that the forum-selection clause allows suit in another federal forum).

On the other hand, when a party seeks to enforce a forum-selection clause via a properly brought motion to dismiss, the district court may enforce the forum-selection clause by dismissing the action. *See Security Watch*, 176 F.3d at 374-76.[2] In *Security Watch*, the plaintiff brought suit in the U.S. District Court for the Western District of Tennessee alleging breach of contract and other claims. *Id.* at 370. The contracts at issue contained both a forum-selection clause, providing that any action must be brought in state or federal court in Virginia, and an alternative-dispute-resolution ("ADR") clause. *Id.* The defendants moved to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure (without naming a specific subsection). The district court granted the motion on the grounds that both the forum-selection clause and the ADR clause precluded litigation of the action in Tennessee. *Id.* On appeal, we affirmed the district court's dismissal of the action on the

---

[2]Of course, if transfer is not possible because a valid forum-selection clause mandates venue in state court or a foreign jurisdiction, § 1404(a) does not apply. *See* 14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3803.1 (2008).

basis of the forum-selection clause. *Id.* at 374-76. In contrast to *Ricoh* and *Kerobo*, neither party in *Security Watch* moved for transfer under § 1404(a) or otherwise raised § 1404(a) before the district court.

Accordingly, it is my view that the two lines of cases described above provide alternative procedural mechanisms for enforcing a valid forum-selection clause. Whether a district court should consider a forum-selection clause as one factor within § 1404(a)'s balancing test, or instead consider it standing alone (in determining whether to dismiss the case), depends on whether the parties have invoked the clause in a motion to transfer venue under § 1404(a) or in a motion to dismiss under FED. R. CIV. P. 12(b)(6). *See* 14D WRIGHT, MILLER & COOPER, *supra*, § 3803.1 ("The better view, followed by the First, Second, and Third Circuits is that a forum selection clause does not render venue improper in an otherwise proper forum and that a valid clause should be enforced by either a Section 1404(a) transfer or a Rule 12(b)(6) motion to dismiss for failure to state a claim."). Because the defendant has not yet moved to enforce the forum-selection clause via either of these mechanisms, I agree that the case should be remanded so that the district court may rule on a properly brought motion.

———————

**DISSENT**

———————

MERRITT, Circuit Judge, dissenting. The forum shopping and procedural fencing litigation tactics of plaintiff's lawyers in this case are obvious. The case was filed in an alien forum in contravention of a perfectly valid forum selection clause for the purposes of delay and obfuscation. The defendants immediately protested and cited the contract provision. In a hasty and completely erroneous opinion, the District Court decided the case for the local plaintiffs and enjoined the defendants from seeking to collect their debts elsewhere by any means. Reading my colleague's opinion, you would never know that this is what this case is about. Based upon no stated policy, principle or purpose, my colleagues further prolong and protract the litigation by sending it back to the same alien courtroom for unnecessary motions, delay and wasted litigation costs while the mortgage market deteriorates. I would follow the admonition of Justices Kennedy and O'Connor in their concurring opinion in the *Ricoh Corporation* case, 487 U.S. 22, 33 (1988), concerning the enforcement of contractual forum selection clauses that the parties have clearly agreed to:

> The federal judicial system has a strong interest in the correct resolution of these questions [regarding the enforcement of a forum selection clause], <u>not only to spare litigants unnecessary costs but also to relieve courts of time consuming pretrial motions</u>. Courts should announce and encourage rules that <u>support</u> private parties who negotiate such clauses. (Emphasis added.)

I would "support" the forum selection clause of the parties.

We have set aside the injunction issued by the District Court, an injunction which effectively decided the case for the local plaintiffs against the New York lenders, Prudential and National City Bank. The court below dispensed with the forum selection clause and voided the contract and then enjoined the defendants from "requesting payment" or attempting to enforce the contract by drawing "upon the following irrevocable, standby letters of credit guaranteed by plaintiffs." The injunction attempted to end the controversy by stopping the lenders from bringing a contract action in New York, as provided in the contract between the parties. In light of the potential for delay and further error, we should decide the forum selection clause issue ourselves here and now.

The enforceability of a forum selection clause is a question of contract law that we review *de novo*. *Security Watch, Inc. v. Sentinel Sys.*, 176 F.3d 369, 371 n.2 (6thCir. 1999) (citing *Baker v. Leboeuf, Lamb, Leiby & MacRae*, 105 F.3d 1102, 1004 (6th Cir. 1997)). When analyzing forum selection clauses, we have relied on the RESTATEMENT (SECOND) OF CONFLICT OF LAWS. *See Security Watch*, 176 F.3d at 375. Although the district court only performed a cursory analysis of the forum selection clause, the issue was decided and is ripe for review. *Cf. Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006).

Though forum selection clauses were once disfavored, the Supreme Court stated in 1972 that such clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (citation omitted); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 80 (1988 Revision) ("The parties' agreement as to the place of action will be given effect unless it is unfair or unreasonable."). According to the RESTATEMENT, a court should only decline to enforce a forum selection clause if: (1) it was "obtained by fraud, duress, the abuse of economic power or other unconscionable means,"

(2) the designated forum "would be closed to the suit or would not handle it effectively or fairly," or (3) the designated forum "would be so seriously an inconvenient forum that to require the plaintiff to bring suit there would be unjust." *Security Watch*, 176 F.3d at 375 (quoting RESTATEMENT § 80 cmt. c). Because no valid claim is made, nor does the record reveal any evidence, that the forum selection clauses agreed upon by Prudential and Langley have any such flaws, they should be enforced now in this appeal. The RESTATEMENT considerations are the correct considerations to analyze, whether under § 1404(a) or otherwise.

First, nothing in the record suggests that the Rate Lock Agreements were the result of fraud, duress, or an abuse of economic power. Langley is a sophisticated investor with considerable experience making real estate development projects on the scale of those involved in the instant litigation. Second, New York is an appropriate venue, one capable of handling the lawsuit effectively and fairly. Indeed, New York occupies an important position as a center of financial markets and institutions. *See*, *e.g.*, *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 394 (2d Cir. 2001). Finally, the designation of New York as the venue for any litigation would not result in an injustice to either Langley or Prudential. Langley is a resident of Florida, while Prudential's representatives were located in Chicago, Illinois. The real estate projects underlying this litigation were located in Alabama and Mississippi. As a result, there is no true epicenter of the case. And while it is true that Langley's two corporate co-plaintiffs were located in Kentucky and that a number of the events leading to this lawsuit also occurred there, I do not believe that this fact creates a sufficiently compelling reason to disregard the contractually agreed upon venue. The parties to this lawsuit are sophisticated and capable entities; consequently, honoring the forum selection clause will not result in any injustice.

A remand for further motions and proceedings, including a potentially long, drawn-out proceeding under § 1404(a), could easily result in the case remaining in the District Court in Kentucky based on an interlocutory ruling that is not immediately appealable — after which there will presumably have to be a proceeding on the merits of the contract. Some years from now we would get the case back on appeal. In the meantime the lenders may decide to bring suit in New York, as provided in the forum selection clause, and the action may go forward there as well. Our Court's ruling today is hardly consistent with the overriding policy "not only to spare litigants unnecessary costs but also to relieve courts of time-consuming pretrial motions." The proper solution to this problem is to terminate this action brought in the wrong court so that the parties can either settle their dispute or litigate it in the proper forum.